IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| THE BOARD OF LUCAS COUNTY COMMISSIONERS, et al. | )<br>)<br>) |
| Plaintiffs, | ) |
| v. | ) Case No. 3:24-cv-00779 |
| U.S. ENVIRONMENTAL PROTECTION AGENCY, et al. | )<br>)<br>) |
| Defendants. | ) |

**REPLY IN SUPPORT OF STATE AND NATIONAL AGRICULTURAL ASSOCIATIONS' MOTION TO INTERVENE AS DEFENDANTS**

The Agricultural Associations satisfy both the requirements for intervention as of right under Federal Rule of Civil Procedure 24(a) and for permissive intervention under Rule 24(b). Plaintiffs and Defendants oppose intervention as of right on the ground that Defendants adequately represent their interests. In so arguing, they lean heavily on inapposite cases and the general alignment between the Agricultural Associations and Defendants in opposing Plaintiffs' claims. Under Supreme Court precedent, however, the Agricultural Associations meet their minimal burden of showing that Defendants, in serving the broader public interest, cannot adequately represent the Agricultural Associations' more specific economic interests. Plaintiffs also assert that the Agricultural Associations do not satisfy the substantial interest and impairment prongs of the test for intervention as of right, but they ignore allegations in their Complaint and the most analogous cases that demonstrate why the Agricultural Associations meet both prongs.

Nonetheless, deciding whether to grant the Agricultural Associations' motion need not be so complicated. This Court need not decide whether to grant intervention as of right and can simply

1

grant permissive intervention. *Cf. Buck v. Gordon*, 959 F.3d 219, 223 (6th Cir. 2020) ("Because we hold that the Dumonts are entitled to permissive intervention, we address only those arguments.") (internal quotation marks and citation omitted). Here, Defendants have not opposed permissive intervention, and Plaintiffs' arguments in opposition lack merit. Plaintiffs do not dispute the timeliness, nor do they argue that the Agricultural Associations' intervention would cause prejudice or delay. And there can be no serious dispute that the Agricultural Associations' defenses in this case share common questions of law and fact with the main action. Thus, the Agricultural Associations satisfy all requirements for permissive intervention under Rule 24(b).

## ARGUMENT

**I. Both Plaintiffs' and Defendants' Arguments Opposing Intervention as of Right Lack Merit.**

The timeliness of the Agricultural Associations' motion is not at issue. *See* Pls' Opp'n (Doc. #34) at 2; Defs' Opp'n (Doc. #32) at 1. Nor do Defendants dispute that the Agricultural Associations have a substantial legal interest in the case that will be impaired absent intervention; Defendants only dispute the adequacy of representation by existing parties. Defs' Opp'n (Doc. #32) at 1. Plaintiffs, by contrast, assert this Court should deny intervention because Agricultural Associations "have not established the second, third or fourth criteria (substantial legal interest, impairment of that interest, and inadequate representation by existing parties, respectively)." Pls' Opp'n (Doc. #34) at 2. Under this Court's and the Sixth Circuit's "lenient" standard for intervention as of right, Plaintiffs' criticisms are misguided. *See Zeeb Holdings, LLC v. Johnson*, 338 F.R.D. 373, 376 (N.D. Ohio 2021); *accord Purnell v. City of Akron*, 925 F.2d 941, 950 (6th Cir. 1991) ("Rule 24 is broadly construed in favor of potential intervenors.").

2

    A.    <u>The Agricultural Associations Have a Substantial Legal Interest in This Case That Would Be Impaired if Plaintiffs Obtain the Relief Requested.</u>[1]

Plaintiffs agree (Doc. #34 at 3) that the Sixth Circuit interprets the interest prong "expansively," and they do not dispute that a proposed intervenor can satisfy the "minimal burden" under the impairment prong merely by showing that it "*might* be practically disadvantaged by the disposition of the action." *Zeeb Holdings*, 338 F.R.D. at 379 (citation omitted). Yet in a strained attempt to analogize this case to two Endangered Species Act cases where the courts denied intervention, Plaintiffs say their case is only about "send[ing] the agency back to the drawing board" to conduct further proceedings that the Agricultural Associations can participate in. *See* Pls' Opp'n (Doc. #34) at 3-4. In both of those cases, environmental groups challenged an agency's decision to not list certain species as endangered. *See Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, No. 21-cv-00455, 2021 U.S. Dist. LEXIS 222033, at *6 (D. Or. Nov. 16, 2021); *Friends of Wild Swan, Inc. v. U.S. Fish & Wildlife Serv.*, 896 F. Supp. 1025, 1026-27 (D. Or. 1995). Both courts denied attempts by trade associations and landowners to intervene, because a ruling in the plaintiffs' favor would only require the agency to revisit its listing decisions; neither court could have compelled the agency to actually list those species as endangered. *See Ctr. for Biological Diversity*, 2021 U.S. Dist. LEXIS 222033, at *6; *Friends of Wild Swan*, 896 F. Supp. at 1026-27. Given the narrow scope of those cases, any impacts on the movant intervenors' interests that could result from an eventual listing were speculative and might never materialize.

Here, in sharp contrast, Plaintiffs ask this Court to order EPA to "promulgate a new TMDL for western Lake Erie that . . . remedies each of the five legal defects identified" in their Complaint. *See* Compl. (Doc #1), Relief Requested ¶ D. Such an order would direct EPA to: (i) assign specific

---

[1] The Agricultural Associations address the interest and impairment prongs together, just as Plaintiffs do. *See* Pls' Opp'n (Doc. #34) at 3-5.

"wasteload allocations" (*i.e.*, "apportion pollution reductions") to "CAFOs applying liquid waste to tile-drained fields," which according to Plaintiffs, includes "all dairy and most swine CAFOs in the watershed;" *id.* ¶¶ 16, 156, 167; (ii) apportion pollution reductions to "all nonpoint sources" in the Maumee watershed, including agricultural sources, which Plaintiffs contend are "the largest nonpoint source category," *id.* ¶¶ 63, 85-86, 171, 175, 177; and (iii) "provide 'specific actions, schedules and monitoring'" that agricultural sources within the Maumee Watershed must comply with to attain water quality standards. *Id.* ¶¶ 184-87.[2] Therefore, on the face of the Complaint, this case is *not* just about sending EPA back to the drawing board to figure out *if* it should promulgate any new regulatory requirements that agriculture must comply with. Rather, the whole point is to obtain a prescriptive court order locking EPA into promulgating those requirements. Unlike in Plaintiffs' cited cases, the result of this litigation *would* have a "direct, immediate, or harmful effect on [the Agricultural Associations] or their members." *Ctr. for Biological Diversity*, 2021 U.S. Dist. LEXIS 222033, at *6.

Tellingly, Plaintiffs ignore the most analogous case, discussed in the Agricultural Associations' Motion (Doc. #19-1 at 9-10), granting intervention in a challenge to a TMDL. There, the court emphasized that the intervenor associations' members had an interest in the amount of nutrients and sediment that they could discharge into the watershed that was subject to the Chesapeake Bay TMDL. *See Am. Farm Bureau Fed'n v. EPA*, 278 F.R.D. 98, 104-06 (M.D. Pa. 2011). That case is no outlier. Similarly, another court granted intervention as of right in a

---

[2] Plaintiffs fault the Agricultural Associations for "not attach[ing] declarations or other evidence," but the Associations' interest is self-evident from the Complaint and the relevant decision documents in the administrative record. *E.g.*, Ohio EPA, Responsiveness Summary, https://dam.assets.ohio.gov/image/upload/epa.ohio.gov/Portals/35/tmdl/MaumeeNutrient/MWN_TMDL_PMR%20RtoC.pdf (Nov. 2022) (summarizing and responding to comments by several of the Agricultural Associations). Furthermore, Plaintiffs cite no authority that requires a movant to submit declarations in support of intervention.

4

challenge to EPA's approval of several TMDLs in Oregon. *See* Order Granting Intervention, *Northwest Environmental Advocates v. EPA*, No. 12-cv-1751 (D. Or. Jan. 27, 2014), ECF No. 49. That court explained why a ruling in the plaintiffs' favor "would almost certainly result in modified wasteload allocations for the [intervenor association's] members, likely increasing their costs in complying with the CWA" and thus, the intervenor met the second and third requirements to intervene as a matter of right. *See id.* at 4-5. These grants of intervention in TMDL cases should control the outcome here, not the inapposite Endangered Species Act cases that Plaintiffs rely on.

Finally, Plaintiffs' argument (Doc. #34 at 4-5) that the Agricultural Associations' technical expertise is irrelevant and cannot be considered by this Court misses the mark. For one, Plaintiffs baselessly assume that the Agricultural Associations will inject extra-record evidence into this case. But more importantly, Plaintiffs ignore that the Agricultural Associations' "specialized knowledge *is* relevant to assessing the effect of . . . agricultural regulatory schemes." *See* Order, *Defs. of Wildlife v. U.S. Fish & Wildlife Serv.*, No. 21-16382, at 4-5 (9th Cir. Aug. 24, 2022), ECF No. 35 (emphasis added; reversing district court's denial of intervention). It comes as no surprise that courts have routinely allowed agricultural trade associations to intervene in cases challenging EPA's application of the Clean Water Act to agricultural operations. *See* Agric. Ass'ns' Mot. to Intervene (Doc. #19-1) at 8-9 (collecting cases allowing agricultural associations to intervene in cases involving EPA's interpretation of the Clean Water Act's exclusion of "agricultural stormwater discharges" from permitting, which Plaintiffs are attacking in this case).

For these reasons, the Agricultural Associations satisfy the interest and impairment prongs for intervention as of right under Federal Rule of Civil Procedure 24(a).

B. <u>The Defendants Do Not Adequately Represent the Agricultural Associations' Interests.</u>

Plaintiffs and Defendants both assert that EPA can adequately represent the Agricultural Associations' members' interests in this litigation. *See* Pls' Opp'n (Doc. #34) at 5-8; Defs' Opp'n (Doc. #32) at 1-2. Their arguments boil down to the fact that Defendants and the Agricultural Associations seek the same outcome: a win for EPA and a loss for Plaintiffs. As detailed below, however, the Agricultural Associations meet their "minimal" burden to show that representation by EPA "may be inadequate." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972). And to the extent a presumption of adequate representation *might* be consistent with Supreme Court precedent in some cases, the Agricultural Associations easily overcome that presumption here.

*Trbovich* alone establishes that the Agricultural Associations meet the inadequate representation test. There, the Secretary of Labor argued that a private party seeking intervention had an "interest [] identical with the interest represented by the Secretary," because the relevant statute effectively obligated the Secretary to act as the intervenor's lawyer. *Id.* at 538-39. But even that close alignment was not enough to show adequate representation. The Court rejected the Secretary's suggestion that he should be presumed to adequately represent the intervenor's interest, because "even if the Secretary is performing his duties, broadly conceived, as well as can be expected," the proposed intervenor "may have a valid complaint about the performance of his lawyer," *i.e.*, the Secretary, with respect to protecting proposed-intervenor's narrower interests. *Id.* at 539. Notably, the Supreme Court recently clarified that, "[r]ather than endorse a presumption of adequacy, the [*Trbovich*] Court held that a movant's burden in circumstances like these 'should be treated as minimal.'" *Berger v. N.C. State Conf. of NAACP*, 597 U.S. 179, 196 (2022) (citation omitted).

6

Plaintiffs nonetheless cite a handful of cases in which courts in this Circuit presumed that the defendants adequately represented the movant intervenors' interests, including cases stating that a disagreement in litigation strategy, standing alone, does not show inadequate representation. *See* Pls' Opp'n (Doc. #34) at 5-8. As a threshold matter, it is difficult to square those cases with the Supreme Court's decisions in *Trbovich* and *Berger*. Moreover, only one of those cases addressed the issue of whether a *federal agency* defendant carrying out its statutory duties, while serving the broader public interest, adequately represents the narrower interests of one industry.[3] And that one case, which found that EPA and the State of Ohio adequately represented the interests of trade associations, is easily distinguishable. *See* Pls' Opp'n (Doc. #34) at 7-8 (quoting *Sierra Club*, 2022 U.S. App. LEXIS 577, at *4). There, the trade associations seeking intervention were primarily concerned with speculative litigation scenarios that could "transpire in the future," and they failed to articulate whether they had any interests (*e.g.*, property values, land use) that diverged from the broader public interest. *Id.*

This case is more analogous to *Wineries of Old Mission Peninsula Association v. Township of Peninsula, Michigan*, 41 F.4th 767 (6th Cir. 2022). There, the Sixth Circuit found that overlapping interests in the outcome of the litigation did not warrant a finding of adequate representation because the defendant township's broader interest in "protecting the fisc" and in representing all of its residents (including the plaintiffs) diverged from the proposed intervenor's narrower interest of "safeguarding [its members'] land values, ensuring the quiet enjoyment of

---

[3] For example, Plaintiffs (Doc. #34 at 6) reference a three-part test from *Albright v. Ascension Michigan*, No. 23-1595, 2024 U.S. App. LEXIS 6301, at *14 (6th Cir. Mar. 14, 2024) (and cases cited therein) requiring a movant to show collusion, adverse interests, and failure in the fulfillment of a duty. But Plaintiffs do not cite any case applying that test to determine whether a governmental agency defendant can adequately represent a private party's interest, and there is no mention of that test in *Sierra Club v. EPA*, No. 21-3057, 2022 U.S. App. LEXIS 577 (6th Cir. Jan. 7, 2022), which Plaintiffs rely heavily on.

7

their homes, and preserving the viability of their farms." *Id.* at 774-75. In so holding, the Court highlighted "[n]umerous cases from other circuits dealing with the interest of governmental entities," which underscore why governmental defendants that must "represent the citizenry at large and [their] interests on a macro level" are ill-suited to represent private entities concerned about "the effects that [] litigation will have on their properties." *Id.* at 775 (collecting cases); *see, e.g., Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1255-56 (10th Cir. 2001) ("Although we recognized . . . that a presumption of adequate representation arises when an applicant for intervention and an existing party have the same ultimate objective in the litigation, . . . we held this presumption rebutted by the fact that the public interest the government is obligated to represent may differ from the would-be intervenor's particular interest.").

Here, EPA lacks the interest that the Agricultural Associations have in ensuring that this litigation—and more specifically, the pollutant allocations and specific actions and deadlines that Plaintiffs ask this Court to compel EPA to promulgate—does not negatively impact their members' property values or ability to grow crops and raise livestock. Like the township in *Wineries of the Old Mission*, EPA must represent not only the interests of all of the residents within the Maumee Watershed (including Plaintiffs and their members), it has to represent the public interest of all the Nation's citizens.

Furthermore, the Sixth Circuit has explained that, "to prove that representation *may* be inadequate," "it may be enough to show that the existing party who purports to seek the same outcome will not make all of the prospective intervenor's arguments."[4] *Ne. Ohio Coal. for*

---

[4] Relatedly, Plaintiffs appear to misquote the Sixth Circuit in *Jansen v. City of Cincinnati*, 904 F.2d 336, 343 (6th Cir. 1992). *See* Pls' Opp'n (Doc. #34) at 7. What the Court actually said in that case was "[t]hat there is a *slight* difference in interests between the proposed intervenors and the supposed representative does not necessarily show inadequacy, if they both seek the same outcome." 904 F.2d at 343 (cleaned up; emphasis added).

*Homeless & Serv. Emps. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1008 (6th Cir. 2006) (citation omitted); *accord Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1247 (6th Cir. 1997) (granting trade association intervention as of right and emphasizing that the association, "as a target of the statutes' regulations, would harbor an approach and reasoning for upholding the statutes that will differ markedly from those of the state, which is cast by the statutes in the role of regulator").

Here, as in the aforementioned cases, the Agricultural Associations' approach to defending EPA's action is all but certain to "differ markedly" from EPA's defense. EPA is likely to defend against Plaintiffs' claims that the Maumee TMDL suffers from several legal defects by arguing, *inter alia*, that the pollutant allocation scheme in the TMDL is lawful and that the State has provided reasonable assurance that the allocations will be achieved. *See* U.S. EPA, Decision Document for the Maumee Watershed Nutrient TMDL, Sections 4, 5, & 8 (Sept. 28, 2023), https://www.epa.gov/tmdl/epas-approval-ohios-maumee-watershed-nutrient-total-maximum-daily-load. The Agricultural Associations, however, will argue that: (i) Plaintiffs fail to state a claim because their alleged legal defects are not required elements of a TMDL under the single, best reading of the Clean Water Act; and (ii) even if a *State* chooses to include allocations and reasonable assurance measures in a TMDL document, the Clean Water Act does not authorize the *U.S. EPA* to include those elements in a *federal* TMDL and thus, Plaintiffs' requested remedy is *ultra vires*. Without a doubt, the Agricultural Associations and EPA do not see eye to eye on these questions of statutory interpretation, which were front and center in *American Farm Bureau Federation v. EPA*, 792 F.3d 281, 299-301, 306-08 (3d Cir. 2015) (deferring to EPA's statutory interpretation under the recently overruled decision in *Chevron v. Natural Resource Defense*

9

*Council*, 467 U.S. 837 (1984)).[5] These divergent, adverse interests satisfy the inadequate representation prong of Federal Rule of Civil Procedure 24(a).

Finally, Defendants' argument (Doc. #32 at 1-2) that EPA adequately represents the Agricultural Associations' interests is even less convincing than the Plaintiffs' arguments. Defendants first cite an Eighth Circuit case involving the *parens patriae* doctrine, where the government's sovereign interests encompassed the intervenors' asserted interests. *See Little Rock Sch. Dist. v. N. Little Rock Sch. Dist.*, 378 F.3d 774, 780 (8th Cir. 2004). That decision is a poor fit here, because the Agricultural Associations' "interests at risk in the litigation are not shared by the general citizenry." *Id.* Rather, their specific interest in ensuring that their ability to farm is not burdened by unreasonable or unlawful regulatory requirements under the Clean Water Act "go[] beyond the general public interest in the preservation of natural resources." *Id.* (citation omitted). Defendants also rely on *Kleissler v. U.S. Forest Service*, but *Kleissler* demonstrated that in cases like this, "when the proposed intervenors' concern is not a matter of 'sovereign interest,' there is no reason to think the government will represent it." 157 F.3d 964, 972 (3d Cir. 1998) (citation and quotation marks omitted). Not surprisingly, *Kleissler* held that the federal agency did *not* adequately represent timber harvesting companies, school districts, or municipalities in defending against attempts to block logging in a national forest. *See id.* at 973-74.

In sum, despite Plaintiffs' and Defendants' contrary claims, EPA does not adequately represent the Agricultural Associations' interests.

---

[5] It is of no consequence that the Agricultural Associations seek to defend against Plaintiffs' claims on grounds that EPA did not actually invoke in the challenged decision. Although courts generally "may only judge the propriety of an agency decision on the grounds invoked by the agency," they are "not so bound when, as here, the issue in dispute is the interpretation of a federal statute." *See Ry. Labor Execs. Ass'n v. ICC*, 784 F.2d 959, 969 (9th Cir. 1986).

## II. Plaintiffs' Arguments Opposing Permissive Intervention Lack Merit.

Defendants do not offer any arguments in opposition to permissive intervention. *See* Defs' Opp'n (Doc. #32) at 2. Plaintiffs do not contest the timeliness of the Agricultural Associations' Motion, nor do they argue that the associations' intervention "will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Instead, Plaintiffs assert that the Agricultural Associations lack "a claim or defense that shares with the main action a common question of law or fact," and they recycle their adequate representation arguments in opposing permissive intervention. *See* Pls' Opp'n (Doc. #34) at 9-10. Neither argument has merit.

The Agricultural Associations' Motion (Doc. #19-1 at 12) makes clear that they intend to raise common question of law or fact. Plaintiffs seek an order declaring that EPA's approval of the Maumee TMDL violates the Clean Water Act because the TMDL suffers from "five legal defects" detailed in the Complaint, and they ask this Court to order EPA to promulgate a federal TMDL that "remedies each of the five legal defects." Compl. (Doc. #1), Relief Requested ¶¶ A, D. The Agricultural Associations will argue, among other things, that Plaintiffs' interpretations of the Clean Water Act and their requested relief are "inconsistent with the statute." *See* Doc. #19-1 at 10. In a case like this, "[t]here can be only one winner in this clash of [statutory interpretation], so the [Agricultural Associations] have presented a common question of law that can be resolved by [this] court." *Buck*, 959 F.3d at 223. More generally, the Agricultural Associations seek to defend against Plaintiffs' allegations that target agricultural activities for additional regulatory requirements and restrictions. *E.g.*, Compl. ¶¶ 112-16, 118-22, 156, 160-67. The Agricultural Associations will raise facts and legal arguments directly responsive to the Plaintiffs' claims, and that is all that is required under the liberal standard for permissive intervention.

Plaintiffs' Complaint belies their assertion (Doc. #34 at 9) that the Agricultural Associations "simply wish to advocate against Plaintiffs in hopes of avoiding the possibility that

a potential *future* TMDL might be objectionable[.]" Plaintiffs want this Court to order EPA to promulgate a TMDL that includes the five specific elements that Plaintiffs allege are required by statute. Nowhere in Plaintiffs' Complaint or their opposition do they even hint at the possibility that, should they prevail in this case, EPA could simply take another look at the Maumee TMDL, offer additional explanations, and approve the TMDL without imposing any new requirements applicable to agricultural activities. Quite the contrary, the entire point of Plaintiffs' case is to secure an order from this Court that dictates exactly what the Maumee TMDL must look like and that requires EPA to promulgate precisely such a TMDL.

Plaintiffs' remaining arguments (Doc. #34 at 9-10) against permissive intervention center on the alleged "identity of interest" between EPA and the Agricultural Associations. As the Sixth Circuit explained, "[t]his question is more pertinent to intervention of right." *League of Women Voters*, 902 F.3d at 579. And for the reasons detailed above (in Part I.B), EPA does not adequately represent the Agricultural Associations' interests, and EPA is unlikely to raise the same arguments as the Agricultural Associations in this case. Here again, Plaintiffs' reliance on *Sierra Club* is misplaced. *See* Pls' Opp'n (Doc. #34) at 9-10. Unlike in *Sierra Club*, the Agricultural Associations are not merely "concerned about what will transpire in the future" in potential enforcement proceedings. *See* 2022 U.S. App. LEXIS 577, at *4-5. Rather, the Agricultural Associations are concerned with the proper application of the statutory agricultural stormwater exclusion to their members' activities and the imposition of new pollutant allocations, deadlines, and other specific actions that Plaintiffs are asking this Court to compel EPA to promulgate. Those are not the sort of speculative, "collateral consequences" that drove the denial of permissive intervention in *Sierra Club*. *See id.*

For these reasons, Agricultural Associations satisfy the requirements for permissive intervention under Federal Rule of Civil Procedure 24(b).

## CONCLUSION

This Court should grant Agricultural Associations intervention as of right under Rule 24(a), or alternatively, permissive intervention under Rule 24(b).

Dated: November 8, 2024

Respectfully submitted,

/s/ Daniel W. Wolff
Daniel W. Wolff (0074168)
David Y. Chung (admitted *pro hac vice*)
Elizabeth B. Dawson (admitted *pro hac vice*)
Eryn C. Howington (admitted *pro hac vice*)
**CROWELL & MORING LLP**
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Phone: (202) 624-2500
Facsimile: (202) 628-5116
Dwolff@crowell.com
Dchung@crowell.com
EDawson@crowell.com
Ehowington@crowell.com

*Attorneys for Proposed Intervenor-Defendants Ohio Pork Council, Ohio Dairy Producers Association, Ohio Cattlemen's Association, Ohio Poultry Association, Ohio Farm Bureau Federation, Ohio Soybean Association, Ohio Corn & Wheat Growers Association, American Farm Bureau Federation, National Pork Producers Council, National Corn Growers Association, and United Egg Producers*

## CERTIFICATE OF SERVICE

I hereby certify that November 8, 2024, I electronically filed a copy of the foregoing reply using the CM/ECF system. Notice of the filing will be sent to all parties in the case by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Daniel W. Wolff
Daniel W. Wolff
