**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| THE BOARD OF LUCAS COUNTY COMMISSIONERS, et al., | ) ) ) | Case No. 3:24-cv-00779 |
| Plaintiffs, | ) ) | Hon. James G. Carr |
| v. | ) ) | |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al., | ) ) ) | |
| Federal Defendants, | ) ) | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO AMENDED MOTION OF
MAUMEE COALITION II ASSOCIATION
TO INTERVENE AS AN ADDITIONAL DEFENDANT**

This case seeks judicial review of a decision by the U.S. EPA pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 704. The APA provides "[t]he reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law… ." 5 U.S.C. § 706(2)(A). Courts must "'review the whole record or those parts of it cited by a party.'" *Sierra Club v. Slater*, 120 F.3d 623, 638 (6th Cir. 1997). "As a general matter, 'courts confine their review to the 'administrative record,'' which 'includes all materials 'compiled' by the agency[] that were 'before the agency at the time the decision was made.'" *Id.*

1

Now, a new seemingly made-up-for-litigation "not-for-profit association of local governments and industries holding NPDES permits issued by the Ohio EPA" calling itself the "Maumee Coalition II Association" ("Coalition II") also seeks to intervene.  Coalition II appears to be newly created for purposes of this litigation. It has no website and is not registered with the Ohio Secretary of State. There are over 3,700 entities that currently hold NPDES permits issued by the Ohio EPA.[1] However, by footnote, Coalition II shares that it currently has only 4 members: the Cities of Lima and Dayton, Ohio, the Board of Commissioners for Allen County, Ohio, and PCS Nitrogen Ohio, L.P. So, it has three members in Allen County and one in Montgomery County (which is not even in the Maumee River Watershed). For the reasons discussed below, this Court should deny intervention to Coalition II. Plaintiffs will not object, however, if Coalition II seeks leave to file a brief as amici curiae.

As the Court is aware, eleven agricultural trade associations also previously moved to intervene in this case, and their motions remain pending. Plaintiffs likewise oppose intervention by the Trade Associations, and their intervention should be denied by this Court. Plaintiffs will not object, however, if the Trade Associations seek leave to file a brief as amici curiae.

The Ohio EPA has also previously moved to intervene. By contrast, the Ohio EPA was a signatory to the consent decree in the previous case, and, as a governmental agency, has a specific provision for permissive intervention under F.R.C.P. Rule 24(b)(2). Plaintiffs do not oppose permissive intervention by the Ohio EPA,

### A. Coalition II's Motion for Intervention as a Matter of Right Should Be Denied.

Intervention as of right under Rule 24(a)(2) requires a timely motion by a movant who "claims an interest relating to the property or transaction that is the subject of the action, and is so

---

[1] https://epa.ohio.gov/divisions-and-offices/surface-water/permitting/individual-wastewater-discharge-permits

situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). The Sixth Circuit requires movants to establish: (1) that the motion was filed timely; (2) that the intervenor has a substantial legal interest in the subject matter of the case; (3) that an interest will be impaired without intervention; and (4) the current parties inadequately protect the proposed intervenor's interest. *Coal. to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 779 (6th Cir. 2007). The movant "must prove each of the four factors; failure to meet one of the criteria will require that the motion to intervene be denied." *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989).

Here, intervention as a matter of right should be denied because Coalition II has not established the second, third or fourth criteria (substantial legal interest, impairment of that interest, and inadequate representation by existing parties, respectively).

> **1. Coalition II has not shown a substantial legal interest nor an impairment of that interest.**

While the Sixth Circuit interprets the interest sufficient to invoke intervention of right expansively, not "any articulated interest will do." *Granholm,* 501 F.3d at 780. The proposed intervenors must show "a direct, significant legally protectable interest" in the subject matter of the litigation, sufficient "to make it a real party in interest in the transaction which is the subject of the proceeding." *United States v. Detroit Int'l Bridge Co*., 7 F.3d 497, 501 (6th Cir. 1993); *Providence Baptist Church v. Hillandale Committee, Ltd*., 425 F.3d 309, 317 (6th Cir. 2005) (citation omitted). The analysis addressing the existence of a substantial legal interest "'is necessarily fact-specific.'" *Id*. (quoting *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997)). Thus:

A person whose interest in the matter of litigation is not a direct or substantial

3

interest, but is an indirect, inconsequential, remote, conjectural or contingent one, cannot intervene. A person having merely a collateral interest in the subject matter of a proceeding cannot intervene in the proceeding. A person or entity does not have a sufficient interest to qualify for the right to intervene merely because an impending judgment will have some effect on him or her. The judgment to be rendered must affect the proposed intervenor's direct or personal rights, not those of another.

*Karst Envtl. Educ. & Prot., Inc. v. FHA*, No. 1:10-CV-00154-R, 2011 U.S. Dist. LEXIS 40782 (W.D. Ky. April 14, 2011), quoting 59 Am Jur. 2d Parties Section 135 (1987).

Coalition II's asserted interests are not legally protectable, and, even if they were, they are too indirect, remote, and conjectural to satisfy Rule 24. *See id.* ("A person or entity does not have a sufficient interest to qualify for the right to intervene merely because an impending judgment will have some effect on him or her.").

First, Coalition II asserts that it has a "substantial legal interest" in this litigation because "some" of its (four current) members "discharge directly into the Maumee River or one of its tributaries…" Doc # 36, pp. 8-9. As a result, Coalition II asserts, any changes to the TMDL that might change its members' current "slice of the allocation pie" would necessarily impair their interests. *Id.* Even if Coalition II's analogy was factually correct (and it is not),[2] it would only work if its members were legally entitled to their current "slice of the allocation pie." This premise is wrong because "no one has the right to pollute." S. Rep. No. 414, 92d Cong., 2d Sess. 76 (1971), reprinted in 1972 U.S. Code Cong. & Admin. News 3668, 3709. Indeed, the Clean Water Act

---

[2] A TMDL is a pollution cap, allocated between point sources (each of which receive a "wasteload allocation") and nonpoint sources (which receive a "load allocation"). Plaintiffs ask the Court to disapprove the TMDL because it fails to assign wasteload allocations to even a single concentrated animal feeding operation (CAFO); instead, the TMDL wrongly treats all CAFOs as nonpoint sources, subject to a single "load allocation." Coalition II asserts that assigning wasteload allocations to discharging CAFOs would somehow increase its members' share of the "allocation pie" in a future TMDL but Coalition II does not, and cannot, explain how that would happen. Assigning wasteload allocations to discharging CAFOs would just re-classify those discharges from the "nonpoint source" to "point source" – it would not change the share of the TMDL allocated to Coalition II members.

authorizes NPDES permits only because there are technological limits to how pollution can be eliminated, "not because of any inherent right to use the nation's waterways for the purpose of disposing of wastes." *Id. See also Wagner v. Scheirer*, 712 F. Supp. 3d 1211, 1225 (D. Minn. 2024) (livestock farmer did not have protectable property interest in modified NPDES permit).

Second, Coalition II's claimed interests are too indirect to warrant intervention and would not be impaired by entry of a judgment for Plaintiffs. As explained in Plaintiffs' brief opposing the Trade Associations' motion to intervene (Doc #: 34), multiple courts have recognized that where an APA case merely asks a court to set aside an agency decision and send the agency back to the drawing board, intervenors who support the decision do not have a direct, non-conjectural injury necessary to support intervention. *See*, *e.g., Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv*., No. 3:21-cv-00455-HZ, 2021 U.S. Dist. LEXIS 222033 (D. Or. Nov. 16, 2021); *Friends of the Wild Swan v. U.S. Fish & Wildlife Serv*., 896 F. Supp. 1025, 1027 (D. Or. 1995).[3]

That is the case here. Coalition II argues that its members could be injured by potential provisions in a new TMDL (e.g., wasteload allocations that would have "a dramatic effect on [member] financial conditions," a margin of safety that is "arbitrarily and unnecessarily large" or "reasonable assurances" of nonpoint source reductions that are "overly strict"). Doc. #38 at 6. But those claimed injuries would not result directly from resolution of this case; they are hypothetical issues that might result from a future TMDL. Plaintiffs are not asking this Court to establish a TMDL or impose any wasteload allocations or other requirements on Coalition II members. Instead, Plaintiffs ask the Court to set aside U.S. EPA's approval of the TMDL and require it to prepare a new one. Coalition II's concern that Plaintiffs could eventually demand more stringent limits on the "PSs that include the Coalition members" is particularly remote, since that would not

---

[3] These decisions are discussed at Doc #: 34, p. 3. In the interests of brevity, that discussion will not be repeated here, but is instead fully incorporated by reference into this Memorandum.

happen in this case, and two of the three Plaintiffs are themselves local governments holding NPDES permits issued by the Ohio EPA, which is the apparent criteria for membership in Coalition II.

At the end of the day, like the Trade Associations, Coalition II can participate in the administrative process for that new TMDL and argue for whatever wasteload allocations, margin of safety, and other items it believes appropriate. It can also challenge any new TMDL approval in its own APA case and would have a full opportunity to comment on any proposed consent decree in this case. Because Coalition II does not have a legally protectable interest in this case, and any interests it may have are attenuated and conjectural, intervention as of right should be denied.

> **2. Coalition II has failed to demonstrate that the current parties will not adequately represent its interests, which is the fourth criteria for intervention.**

To intervene as a matter of right, movants must establish that current parties do not adequately represent their interests. Movants "bear the burden of proving that they are inadequately represented by a party to the suit." *United States v. Michigan*, 424 F.3d 438, 443 (6th Cir. 2005). "This burden has been described as minimal because it need only be shown that there is a potential for inadequate representation." *Id*. (quotations omitted). "Nevertheless, applicants for intervention must overcome the presumption of adequate representation that arises when they share the same ultimate objective as a party to the suit." *Id*. (citing *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987)).

"[A] movant fails to meet his burden of demonstrating inadequate representation when 1) no collusion is shown between the existing party and the opposition; 2) the existing party does not have any interests adverse to the intervener; and 3) the existing party has not failed in the fulfillment of its duty." *Albright v. Ascension Michigan*, No. 23-1595, 2024 U.S. App. LEXIS 6301 at *14

(6th Cir. March 14, 2024) (quoting *Jordan v. Mich. Conf. of Teamsters Welfare Fund*, 207 F.3d 854, 863 (6th Cir. 2000)). "A mere disagreement over litigation strategy or individual aspects of a remediation plan does not, in and of itself, establish inadequacy of representation." *Id.* (quotations omitted). "Indeed, a purported lack of vigor in litigation compared to what the movant would have summoned cannot show the necessary inadequate representation." *Id.* (citing *Jordan,* 207 F.3d at 863).

Coalition II does not even acknowledge the presumption of adequate representation, which unquestionably applies here because, like the Trade Associations, Coalition II shares an identical "ultimate objective" in this case with Defendants: entry to judgment against Plaintiffs and a finding that U.S. EPA properly approved the TMDL. Nor does Coalition II even try to overcome the presumption, which it cannot do because there has been no showing of collusion, adverse interests or inadequate fulfillment of duty on the part of the Defendants.

Instead, Coalition II argues that it should be permitted to intervene because its interests are different than those of the U.S. EPA, including "narrower economic and civil interests." Doc. #38 at 13. But as explained in Plaintiffs' brief opposing the Trade Associations' intervention motion, (Doc #: 34), "[w]here the proposed intervenor and the defendants seek the same outcome, the fact that there is a difference in interests is not by itself sufficient to demonstrate the possibility of inadequate representation." *Jansen v. Cincinnati*, 904 F.2d 336, 341 (6th Cir. 1992)). The Sixth Circuit recently applied this principle to deny intervention to trade associations in a Petition for Review of a final rule issued by U.S. EPA in *Sierra Club v. United States EPA*, No. 21-3057, 2022 U.S. App. LEXIS 577 (6th Cir. Jan. 7, 2022).[4]

Likewise, in *Tarpon Towers II, LLC v. City of Sylvania*, 586 F. Supp. 3d 755, 758 (N.D.

---

[4] This decision is discussed at Doc #: 34, pp. 7-8 . In the interests of brevity, that discussion will not be repeated here, but is instead fully incorporated by reference into this Memorandum.

Ohio 2022), the court denied intervention to an unincorporated association of citizens of the City of Sylvania, which was the named defendant. "While [Proposed Intervenor] offers different interests and affirmative defenses, [it] seeks precisely the same relief sought by the City -- the dismissal of the Complaint. This is insufficient to justify intervention." *Id.* (citing *Blount-Hill v. Ohio,* 244 F.R.D. 399, 404 (S.D. Ohio 2005)). *See also, e.g.*, *Kentucky v. United States EPA*, No. 3:23-cv-00007, 2023 U.S. Dist. LEXIS 38661 at *7-8 (E.D. Ky. March 8, 2023) (no inadequacy of representation shown where proposed intervenors, wildlife conservation groups, shared the same goal as defendant EPA: defending and upholding an EPA rule).[5]

Coalition II also argues that it might be collaterally estopped from relitigating issues decided in this case if the Court denied intervention on based on adequate representation (Coalition II claims such a finding would put it in "privity" with U.S. EPA). Doc. #38 at 10-11. But whether and how a ruling in the case would impact Coalition II is irrelevant to the question of adequate representation. Even if Coalition II members could not relitigate an issue decided in this case in a future TMDL challenge, that does not mean U.S. EPA failed to adequately represent Coalition II members in this case, where they seek identical relief. That is especially true given that this case is limited to the administrative record and U.S. EPA's decision cannot be upheld "on grounds not raised by the agency." *Friends of the Wild Swan v. U.S. Fish & Wildlife Serv*., 896 F. Supp. 1025, 1027 (D. Or. 1995) (citing *National R.R. Passenger Corp. v. Boston & Me. Corp.*, 503 U.S. 407 (1992)).

For the same reason, Coalition II cannot introduce evidence about the "estimated costs and

---

[5] Coalition II relies on *National Parks Conservation Association v. U.S. EPA*, 759 F.3d 969 (8th Cir. 2014), but the Eighth Circuit does not apply the same presumption of adequate representation that the Sixth Circuit does when parties share the same ultimate goal, as Coalition II and U.S. EPA do here. That Eighth Circuit case also sought an order requiring U.S. EPA to impose major emissions reductions obligations directly on the intervenor, whereas this case merely seeks to reverse approval of a legally defective TMDL.

technical feasibility" of new discharge limits (Doc. #38 at 13), which, as noted earlier, the Court will not be setting in this case. As Plaintiffs explained in response to a similar argument from the Trade Associations, where "a proposed intervenor merely seeks to interject its own "interests and concerns, outside of the administrative record, in defense of [an agency's decision]…[that proposed intervenor does not] have legally protectable interests at this stage in this litigation." *Id*.; *see also*, *Alameda Water & Sanitation Dist. v. Browner*, 9 F.3d 88 (10th Cir. 1993) (denying intervention where intervenor sought to offer additional reasons, outside of the administrative record, to support an agency's denial of a dredge and fill permit).

Finally, Coalition II argues it should intervene to assert additional affirmative defenses relating to the Ohio EPA. *See* Doc. #38 at 14-16. But as just noted, offering different "affirmative defenses" is "insufficient to justify intervention" if the intervenor seeks "the same relief" as existing defendants. *Tarpon Towers II*, 586 F. Supp. 3d at 758. And Coalition II's supposed "affirmative defenses" are not truly affirmative under Federal Rule of Civil Procedure 8(c)(1): simply asserts that Plaintiffs supposedly fail to state a valid claim for relief on various grounds, arguments that U.S. EPA is perfectly capable of arguing in its summary judgment brief.

Because Coalition II cannot show that its interests are inadequately represented by the existing Defendants, this Court should deny its motion to intervene as a matter of right.

**B.  Permissive Intervention Should Also Be Denied.**

Coalition II has alternately requested permissive intervention. A court has discretion to grant permissive intervention to anyone who "has a claim or defense that shares with the main action a common question of law or fact." *Bay Mills Indian Cmty. v. Snyder*, 720 Fed. Appx. 754, 757, 2018 U.S. App. LEXIS 520, *4-5 (quoting Fed. R. Civ. P. 24(b)(1)(B)). In exercising its discretion, the district court must "consider whether the intervention will unduly delay or prejudice

9

the adjudication of the original parties' rights." *Id.* (quoting Fed. R. Civ. P. 24(b)(3)).

Permissive intervention should also be denied in light of the particular circumstances of this case. As explained above, Coalition II does not have "a claim or defense that shares with the main action a common question of law or fact." *Id*. (quoting Fed. R. Civ. P. 24(b)(1)(B)). It simply wishes to advocate against Plaintiffs in hopes of avoiding the unlikely possibility that a potential *future* TMDL might result in greater discharge limits imposed on its members. For the same reasons explained in Plaintiffs' opposition to the Trade Associations' motion (Doc #: 34 at 9-10) this Court should deny permissive intervention to Coalition II. *See also United States v. Michigan*, 424 F.3d at 445 ("The denial of permissive intervention should be reversed only for clear abuse of discretion by the trial judge.")

To the extent that Coalition II wishes to advocate in favor of the existing TMDL, it may seek leave to file a brief as *amicus curiae*. *See Bradley*, 828 F.2d at 1194 (affirming denial of permissive intervention where the "district court has already taken steps to protect the proposed intervenors' interests by inviting [them] to appear as amicus curiae in the case").

Indeed, this approach is particularly appropriate because many other groups or constituencies have views about the TMDL. Allowing all such groups, including Coalition II, to participate as *amici* but not intervenors would enable them to be heard without undermining an orderly process and the efficient administration of justice in this case.

### C. Conclusion.

For the foregoing reasons, Plaintiffs respectfully ask the Court to deny Coalition II's amended motion to intervene both as of right, and permissively. Plaintiffs do not object to an order permitting Coalition II to file a brief as *amicus curiae*.

DATED: November 21, 2024

Respectfully submitted,

*/s/ Tammy G Lavalette*
Dale R. Emch, Director of Law (0080004)
Tammy G. Lavalette, Senior Attorney
(0071533)
City of Toledo, Department of Law
One Government Center, Suite 2250 Toledo,
OH 43604
T: (419) 245-1020
F: (419) 245-1090
dale.emch@toledo.oh.gov
tammy.lavalette@toledo.oh.gov
*Counsel for Plaintiff City of Toledo*

*/s/ Robert Michaels*
Howard A. Learner *Pro hac vice*
Robert Michaels *Pro hac vice*
Kathleen Garvey *Pro hac vice*
Environmental Law & Policy
Center 35 East Wacker Drive,
Suite 1600
Chicago, IL 60601
T: (312) 673-6500
F: (312) 795-3730
hlearner@elpc.org
rmichaels@elpc.org
kgarvey@elpc.org
*Counsel for Plaintiff Environmental Law
& Policy Center*

*/s/ Fritz Byers*
Fritz Byers (0002337)
414 N Erie St., 2nd Floor
Toledo, OH 43604
T: (419) 241-8013
F: (419 241-4215
fritz@fritzbyers.com
*Counsel for Plaintiff The Board of Lucas
County Commissioners*

## CERTIFICATION

This is to certify that a copy of the foregoing *Memorandum in Opposition to Motion of Coalition II to Intervene as Defendants* was electronically filed this 21st day of November, 2024. All parties may access this pleading via the Court's electronic docket system.

/s/ Tammy G. Lavalette
Tammy G. Lavalette, Senior Attorney

11