# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OHIO, WESTERN DIVISION

| | |
|---|---|
| THE BOARD OF LUCAS COUNTY COMMISSIONERS, *et al.* <br><br> *Plaintiffs,* <br><br> v. <br><br> U.S. ENVIRONMENTAL PROTECTION AGENCY, *et al.* <br><br> *Defendants.* | Case No. 3:24-cv-00779 <br> Judge James G. Carr |

## REPLY IN SUPPORT OF MAUMEE COALITION II ASSOCIATION'S AMENDED MOTION TO INTERVENE (MTI)

In their response, Plaintiffs initially seek to disparage and minimize the relevance of the Maumee Coalition II ("the Coalition") by baldly asserting it was "created for the purpose of litigation,"[1] lacks a website, is not registered with the Ohio Secretary of State, and (at the time of the filing of the MTI) had only four members.[2] Such so-called "facts" are irrelevant to whether the Coalition and its members have standing and should be granted intervention. Like the bulk of Plaintiffs' opposition, they attempt to conceal the lack of grounds to deny the MTI using red herrings, mischaracterizations, and a failure to respond in an attempt to distract the Court from the merits of the Coalition's MTI.

Rule 24 is clear. Intervention as a matter of right must be granted if the movant has an

---

[1] As noted in the Coalition's MTI, most of its members were participants in the first Maumee Coalition that directed participated in every stage of the development of the Maumee TMDL.

[2] As of the date of this Reply, the Coalition's current members have expanded to add the Cities of Van Wert, Defiance, Delphos, and Findlay, Ohio, all NPDES permit holders that discharge into the Maumee River watershed  Thus, if the number of permit holders supporting versus opposing U.S. EPA's approval of the Maumee TMDL were somehow indicative of their relevance in this action, the Coalition's eight permit holders seeking to intervene as additional Defendants substantially outnumber the two permit holders that are existing Plaintiffs in this action.

interest in an issue at the core of the action, the disposition of thereof would impair its ability to protect such interest, and its interest is not adequately represented by an existing party. Nothing in Plaintiffs' opposition undercuts the evidence that demonstrates that these criteria have been met. However, the Court need not decide whether the Coalition meets the criteria for intervention as a matter of right, because the Court may grant permissive intervention to the Coalition as an additional Defendant, because the Coalition has clearly presented claims or defenses that share common questions of law or fact with Plaintiffs' Complaint and, perhaps most importantly, the Defendants do not object to permissive intervention. Therefore, the Court should grant permissive intervention to the Coalition.

## I. PLAINTIFFS' OPPOSITION TO INTERVENTION AS A MATTER OF RIGHT LACKS MERIT.

### A. Plaintiffs are not Merely Asking for U.S. EPA's Approval of the Maumee TMDL to be Set Aside.

Plaintiffs allege that the Coalition's interests are too indirect, remote and conjectural to support intervention, and thus would not be impaired by a potential judgment for Plaintiffs. Doc. 44, PAGEID # 1822-1823. Indeed, Plaintiffs assert that they are *simply* requesting that the Court declare U.S. EPA's approval of the Maumee TMDL unlawful, and that doing so would not directly lead to more restrictive permit limitations imposed on Coalition members. *Id.* at PAGEID # 1823-1824. The reality is very different.

Plaintiffs' Complaint alleges five detailed defects with U.S. EPA's approval of the Maumee TMDL, which they ask the Court to order U.S. EPA to remediate by preparing and issuing a *federal* TMDL for the Maumee River basin that contains the terms Plaintiffs want. Doc. 1, PAGEID # 4-5. If the Court were to grant such relief, it would do more than just declare the approval unlawful, but would establish a roadmap for how each of these defects must be fixed in a new Maumee

TMDL issued not by Ohio EPA, but by U.S. EPA. The Plaintiffs ask this Court to issue a decision that would order U.S. EPA to issue a TMDL that:

1. Includes binding limits/allocations for dissolved reactive phosphorus (DRP) in addition to the existing limits/allocations for total phosphorus (TP);

2. Has a Margin of Safety (MOS) more than tenfold higher (3% versus 40%);

3. Assigns binding wasteload allocations to concentrated animal feeding operations (CAFOs);

4. Reapportions load allocations to nonpoint sources; and

5. Contains a more prescriptive implementation plan.

*Compare* Doc. 1, PAGEID # 4-5 *with* PAGEID # 38-39. Although the *degree* of impact of items 3 and 4 on the Coalition's members (and numerous other permit holders that discharge into the Maumee River basin) may be uncertain *at this moment in the case,* items 1, 2, and 4 of Plaintiffs' requests for relief will directly and substantially impact the Coalition members. *See* Doc. 38, PAGEID # 1507-1508 (summary of supporting reasons).

The Endangered Species Act decisions (Doc. 44, PAGEID # 1822-1823) cited by the Plaintiffs for support are inapposite. As pointed out by the Ag Trade Groups in their Reply Memorandum,[3] those decisions involved a denial of intervention because a ruling in plaintiffs' favor would merely require U.S. EPA to revise its listing of endangered species, and the courts did not have authority to compel the Agency to actually list a specific species. Doc. 40, PAGEID # 1581 (Ag Trade Group's Reply). That is not the case here, where Plaintiffs request the Court to direct U.S. EPA to issue a new Maumee TMDL with the specific terms Plaintiffs want to see.

Furthermore, Plaintiffs failed to address TMDL-specific case law where the courts <u>granted</u> intervention after finding that intervenors had an interest in how much nutrients and sediment they

---

[3] Where appropriate, to avoid duplication, the Coalition refers to the Reply filed by the Ag Trade Groups in response to the almost identical opposition filed by Plaintiffs to their MTI.

would be permitted to discharge into the watershed. *Id.* at PAGEID # 1582-1584.

The reality is that Plaintiffs are not merely requesting that the Court declare U.S. EPA's approval unlawful, but want the Court to issue a judgment that adopts their view of what the contents of a new TMDL should be, while, at the same time, are asking the Court to deny the Coalition, whose members are NPDES permit holders directly and significantly impacted by such judgment, the right to defend its legitimate interests.

**B. Plaintiffs Mischaracterize or Ignore the Coalition's Substantial Interests and how they Would be Impaired if Intervention is Denied.**

Plaintiffs present a hodgepodge of theories why the Coalition has no substantial legal interest that would be impaired if intervention is denied. All are intellectually bankrupt.

First, Plaintiffs make the rather silly assertion that the Coalition should be denied intervention because its members have "no right to pollute" and, thus, no basis to intervene to protect such "right." Doc. 44, PAGEID # 1822-1823. Under such twisted logic, citizens younger than age 35would not have a right to challenge a revised driving law that allow only those older than age 35 to drive, since no one has the "right to drive." In point of fact, however, Coalition members have the right to discharge wastewater containing certain pollutants in specified quantities and/or rates, having been granted such "right" in an NPDES permit issued by Ohio EPA. Plaintiffs may cast these permits as merely a "license" if they like, but once such "license" is issued, it conveys just as much of a right as a driver's license, a medical license, a law license, *etc.*, and the notion that one who possesses a license does not have the right to protect it is inane.

Second, Plaintiffs attempt to discredit the Coalition's "slice of the pie" analogy, but fail to address the very real impacts on the Coalition's members as articulated in their MTI, which effects inevitably follow from granting the type of relief requested in Plaintiffs' Complaint:

1. Because TMDLs are akin to pollution diets, how the "pieces of the allocation pie" are

4

distributed among the various PSs and NPSs, and the size of the piece apportioned to each source, impact *all* sources. Therefore, whether CAFOs receive specific limits for their discharge of phosphorus, and whether load allocations for NPSs are specifically apportioned among all NPSs of phosphorus, directly impacts the "slice of the allocation pie" to be allocated to the members of the Coalition.

2. Because the technology used to achieve effluent limits for TP is substantially less expensive than what is needed to achieve effluent limits for DRP, the establishment of permit limits in the TMDL for DRP, as the Complaint demands, would require the members to expend substantial capital as soon as their NPDES permits were updated to incorporate the TMDL-based DRP requirements.

3. Plaintiffs' demand that the MOS be increased (from 3% to 40%) will dramatically increase the pollutant reduction required to be achieved by the members of the Coalition, thereby driving up their costs. Increases in treatment costs divert capital which would otherwise be used to expand treatment systems to be able to attract new businesses and serve increasing populations, or requires substantial rate increases which may not be affordable.

4. Because nutrient enrichment conditions are driven by numerous factors other than PS and NPS contributions, an implementation plan whose "reasonable assurances" are overly strict, particularly in terms of timetables, may well result in a premature and unnecessary reapportionment of the allocation pie, resulting in more stringent allocations and corresponding permit limits for the members of the Coalition. Doc. 38, PAGEID # 1507-1508.

Plaintiffs' failure to address, much less rebut, these impacts make clear that the Coalition has demonstrated a substantial legal interest warranting intervention. If Plaintiffs succeed in this litigation, the Coalition's members would have to invest substantial capital and O&M costs to

5

install and operate additional treatment equipment, paid for by rate increases imposed upon their residents (local governments) or price increases charged to customers (private companies). *See e.g. Utahns for Better Transportation v. U.S. Dept. of Transportation*, 295 F.3d 1111, 1115 (10th Cir. 2002) (concluding that "[t]he threat of economic injury from the outcome of litigation undoubtedly gives a petitioner the requisite interest [to intervene]").

Plaintiffs also failed to address the Coalition's argument that if Plaintiffs fail to convince the Court that CAFOs and other NPSs cannot be regulated as PSs under the CWA, their focus (to achieve further reductions in phosphorus discharges) will shift to demanding that the Court order U.S. EPA to impose more stringent limits on the remaining phosphorus sources, which include the Coalition members. *Compare Id.* at PAGEID # 1511-1512 (Coalition's MTI) *with* Doc. 44, PAGEID # 1819-1828 (Plaintiffs' opposition). And, as noted in the Coalition's MTI, there is reason for it to be concerned that Plaintiffs might find a willing partner in U.S. EPA to impose such stricter limits on permit holders. *See* Doc. 38 at PAGEID # 1511-1512 and n. 5 (U.S. EPA's policy requiring, in such circumstance, a reevaluation of the allocations for permit holders, and the Agency's 2021 objection to the draft phosphorus permit limit for the City of Euclid, Ohio).

Plaintiffs have failed to rebut the Coalition's demonstration that it has a substantial legal interest in this proceeding that will be impaired if intervention were denied.

**C. Whether Plaintiffs *believe* it is a "Remote Possibility" that a Revised TMDL would Harm the Coalition is Irrelevant, but, More Importantly it is Contradicted by the Scope of Their Requested Relief.**

Perhaps the most quixotic of the Plaintiffs' arguments is their assertion that the Coalition will not be harmed and thus should not be granted intervention because it is a "remote possibility" that the preparation of a revised TMDL would result in Coalition members being subjected to more stringent phosphorus limits, going so far as to even state "it would not happen in this case." Doc.

6

44, PAGEID # 1823-1824. Plaintiffs must be misreferring to an early draft of their Complaint, because the one they filed explicitly demands exactly that scope of relief. The only support they can to muster is the statement that two of the Plaintiffs are local government permit holders, and the implication that they would have to be foolish to ask the Court to issue a decision that could potentially cost them millions upon millions of dollars. *Id.* at PAGEID # 1823-1824. The Coalition cannot opine on the motives of other political subdivisions, but the Complaint they signed onto has the very real potential to do just that.[4]

### D. Plaintiffs Ignore the Substantial Impairment of the Coalition's Interests if it were Forced to Protect Them in the Appeal Process for a Potentially-Revised Maumee TMDL, an Appeal Process Plaintiffs Conveniently Failed to Invoke before Filing this Action.

Finally, Plaintiffs assert that, even if the Coalition's interests are impaired by the issuance of a new TMDL, the Coalition could participate in the subsequent administrative appeal process and challenge it as needed. *Id.* at PAGEID # 1824. This is a disingenuous assertion by Plaintiffs, who failed to utilize the very administrative appeal process they now assert the Coalition should use rather than participate in this action.

While Ohio EPA's issuance of the final Maumee TMDL was not an appealable final action under the express language of Ohio Rev. Code § 6111.561(B), Plaintiffs could have challenged the new TMDL *immediately* after the Agency issued the first NPDES permit containing terms and conditions taken from the new TMDL. *See* Ohio Rev. Code §§ 6111.564 and 3745.04 The Agency issued the first such permit on October 19, 2023,[5] sent directly to the two political subdivisions that are members of the Plaintiffs' group, who were among the list of permit holders subjected to

---

[4] To be clear, without opining on the merits of Plaintiffs' claims relating to the lack of a point source allocation for CAFOs, a judgment that orders the MOS to be increased to 40% and DRP limits to be issued to permit holders in addition to TP limits directly impacts all permit holders that discharge in the Maumee River basin including Plaintiffs' two political subdivision members.
[5] *See* https://dam.assets.ohio.gov/image/upload/epa.ohio.gov/Portals/35/permits/0HP000001/OHP000001.pdf.

7

the new permit (*Id*. n. 5), but Plaintiffs failed to exercise their right to file an administrative appeal of the new TMDL. Despite having ignored their right to use the administrative appeal process available to them, Plaintiffs want to deny invention to the Coalition, because it should instead be relegated to using the same appeal process that they failed to invoke.

Plaintiffs also failed to address the impact of shifting of applicable burdens of proof that would occur in a future state appeal filed by the Coalition in response to the potential issuance of a revised Maumee TMDL (*see* Doc. 38, PAGEID # 1513), and failed to address the prejudice by having to meet in such appeal the stringent standard required to obtain a stay of implementation of a revised Maumee TMDL or otherwise have the members subjected to significant economic, technical and legal burdens to comply with more stringent permit limits and deadlines while waiting for the administrative appeal to run its course. *Id*. at PAGEID # 1513-1514.

The Coalition clearly met its minimal to show that interests may be impaired or impeded if intervention is denied.

### E. Plaintiffs Wrongfully Assert that U.S. EPA Adequately Represents the Coalition's Interests.

Plaintiffs assert that U.S. EPA can adequately represent the Coalition members' interests in this action, and thus intervention should be denied. Doc. 44, PAGEID # 1824-1827. However, the standard is not whether U.S. EPA *can* adequately do so, but rather whether there is a *chance* that U.S. EPA *may not* adequately represent the Coalition. The Coalition has already demonstrated that this possibility exists. As discussed in its MTI, U.S. EPA *may not* adequately represent the Coalition's interests, because there are considerably differences between their interests:

1. U.S. EPA has CWA-driven programmatic and policy interest, and perhaps even political interest, which are much broader than just supporting its approval of the Maumee TMDL (see discussion of the City of Euclid phosphorus limits.

2. U.S. EPA must address Plaintiffs' challenge not just in the context of the limited procedural step taken to approve the TMDL, but also considering the issues raised by Plaintiffs in the terms of their adjudication and the outcome thereof on future TMDL approval across the country whereas the Coalition's interest are limited to whether, in the context of this specific TMDL, Ohio EPA's decisions made in the issuance of the TMDL were lawful and proper.

3. Members of the Coalition also have narrower economic and civic interest to consider (i.e., those of their citizens, employees, and customers who would pay for potentially more stringent phosphorus limits) that U.S. EPA does not.

4. Only the Coalition, not U.S. EPA, have the requisite motivation and ability to present the factual and legal arguments that the estimated costs and technical feasibility of having to meet substantially more stringent future TP discharge limits.

5. The Coalition has asserted significant additional defenses not raised by U.S. EPA or any other party in this proceeding, notably, the affirmative defense that the Court lacks subject matter jurisdiction, and that Plaintiffs failed to avail themselves of their statutory appeal provided by Ohio's Legislature for challenging Ohio EPA issuance of the Maumee TMDL, and thus waived their appeal rights over OEPA's state law decisions, defenses that are potentially dispositive.

Doc. 38, PAGEID # 1513-1518.

Based on these differences in interests, the Coalition has clearly demonstrated that U.S. EPA may not adequately represent the Coalition's interests.

Finally, Plaintiffs assert that the Court must assume that U.S. EPA adequately represents the Coalition because they share the same "ultimate objective," citing to irrelevant and dissimilar cherry-picked cases. Doc. 44, PAGEID # 1824-1826. However, as effectively demonstrated in the Ag Trade Groups' Reply, this presumption does not apply here, where the Coalition has clearly

9

articulated nonspeculative interests that are separate from those of the broader public. Doc. 40, PAGEID # 1585. Plaintiffs also ignore additional, more analogous Sixth Circuit and Supreme Court cases in which the courts did not presumed adequate representation when there were overlapping interests, but the government's broader interest diverged from the proposed intervenor's narrower interest. *Id*. at PAGEID # 1584-1586

## II. THE COALITION SHARES SEVERAL COMMON QUESTIONS OF LAW OR FACT IN THIS ACTION, THUS THE COURT MAY GRANT PERMISSIVE INTERVENTION.

Having run out of viable arguments, the Plaintiffs repackage the same arguments, this time alleging that permissive intervention should not be granted because the Coalition simply wants to "advocate against Plaintiffs in hopes of avoiding the unlikely possibility that a potential future TMDL might result in more restrict limits on its members." Doc. 44, PAGEID # 1825. The Coalition has already rebutted these arguments *supra*. Contrary to Plaintiffs assertion, the Coalition's interests, and the potential impairment thereof, are not indirect or hypothetical. Similar positioned intervenors have been granted intervention as of right, a much stricter standard than that for permissive intervention. For the reasons discussed in the Coalition's MTI, there can be no question that its MTI is timely and the Coalition has multiple claims or defenses that share common questions of law or fact with this action. Therefore, the Coalition requests that the Court exercise its discretion to grant permissive intervention, which the existing Defendants do not oppose.

## III. PLAINTIFFS' OPPOSITION TO ANY INTERVENTION BY THE COALITION CANNOT BE RECONCILED WITH ITS SUPPORT FOR PERMISSIVE INTERVENTION BY OHIO EPA, AND ITS LACK OF OPPOSITION TO INTERVENTION BY OTHER PROPOSED PLAINTIFFS.

The following chart demonstrates the lack of an objectively reasonable basis for Plaintiffs' opposition to the Coalition's MTI:

10

| Intervening Movant | Plaintiffs' Response to Mandatory Intervention | Plaintiffs' Response to Permissive Intervention | Defendants' Response to Mandatory Intervention | Defendants' Response to Permissive Intervention |
|---|---|---|---|---|
| Ag Trade Groups as Additional Defendants | Oppose (Doc. 34) | Oppose (Doc. 34) | Oppose (Doc. 32) | No position one way or the other (Doc. 32) |
| Point Source Coalition as Additional Defendants | Oppose (Doc. 44) | Oppose (Doc. 44) | Oppose (Doc. 38) | No position one way or the other (Doc. 38) |
| Ohio EPA as Additional Defendant | Oppose (Doc. 42) | Do not Oppose Doc. (42) | No position one way or the other (Doc. 33) | No position one way or the other (Doc. 33) |
| Lake Erie Waterkeeper, Food & Water Watch, and Waterkeeper Alliance as Additional Plaintiffs | No position one way or the other (Doc. 46) | No position one way or the other (Doc. 46) | No position one way or the other (Doc. 46) | No position one way or the other (Doc. 46) |

As an initial matter, when an existing party authorizes a moving intervenor to inform the Court that the party "takes no position" as to mandatory or permissive intervention, that is the same thing as saying that the intervention is unopposed. Thus, the responses to the four MTIs distill to the following:

1. For the Ag Trade Groups and the Coalition appearing as additional Defendants, Plaintiffs oppose any intervention, while the existing Defendants do not oppose permissive intervention;

2. For Ohio EPA appearing as an additional Defendant, neither existing Plaintiffs nor existing Defendants oppose intervention, but Plaintiffs do not support mandatory intervention; and

3. For the three environmental organizations appearing as additional Plaintiffs, neither existing Plaintiffs nor existing Defendants oppose mandatory or permissive intervention, but

11

Defendants reserve the right to say otherwise at a later date.[6]

The conflicts created by these responses cannot be reconciled, and cast doubt on the credibility of Plaintiffs' objections. On one hand, Plaintiffs seek to (1) diminish the substantial interests of the Coalition as permit holders directly impacted by the outcome of this action, and the issues they share in common with U.S. EPA; (2) downplay the prejudice if they are denied intervention; and (3) demonstrate that U.S. EPA adequately represents their interests during the defense of its approval of the Maumee TMDL. Yet, at the same time, Plaintiffs apparently agree that Ohio EPA has substantial interests and common issues sufficient to justify permissive intervention as a Defendant, and that U.S. EPA will not adequately represent those interests. And with respect to the MTI filed by three environmental organizations late Friday, December 6, that want to appear as additional Plaintiffs, the existing Plaintiffs apparently agree that the organizations too have substantial interests and common issues with them sufficient to justify *both* forms of intervention, and that existing Plaintiffs do not adequately represent the organizations' interests.

Plaintiffs' responses to all MTIs evidence a clear bias against any party that seeks to intervene on the other side of the case, while not opposing intervention by any party that seeks to join their side of the case. And, with respect to Ohio EPA's MTI, Plaintiffs' lack of total opposition appears politically-motivated or, at most, reflects a failure on their part to understand that permit holders who will be directly impacted by the outcome of this action have just as important and substantial interest as Ohio EPA has in preparing, and then implementing, a potentially revised Maumee TMDL that might be ordered by the Court.

Bottom line, the existing Defendants do not oppose permissive intervention by the

---

[6] Doc. 46, PAGEID # 1835.

Coalition as an additional Defendant in this action, and the Coalition's MTI clearly demonstrates the criteria to support such intervention.  On the other hand, Plaintiffs' opposition to any intervention is motivated by a subjective bias against any party that wants to intervene on the other side of the case, and thus lacks credibility as a basis to decide the Coalition's MTI.

## IV. CONCLUSION.

For the foregoing reasons, Plaintiffs' opposition to the Coalition's MTI is without merit, and their MTI should granted in the form of mandatory or permissive intervention.

Respectfully submitted,

*/s/ Christina Wieg*
Stephen P. Samuels (007979) (Trial Counsel)
Stephen N. Haughey (0010459)
Christina Wieg (0098693)
**FROST BROWN TODD LLP**
10 West Broad Street
Columbus, OH 43215-3484
(614) 371-8042
ssamuels@fbtlaw.com
shaughey@fbtlaw.com
cwieg@fbtlaw.com
*Counsel for the Maumee Coalition II Association*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed electronically on December 9, 2024, using the Court's CM/ECF system, and parties may access the filing under that system.

*/s/Christina Wieg*
*Counsel for the Maumee Coalition II Association*

0148224.0747190  4904-7223-5011v2