## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OHIO, WESTERN DIVISION

THE BOARD OF LUCAS COUNTY
COMMISSIONERS, *et al.*

            *Plaintiffs,*

v.

U.S. ENVIRONMENTAL PROTECTION
AGENCY, *et al.*

            *Defendants.*

Case No. 3:24-cv-00779
Judge James G. Carr

---

### AMENDED REPLY IN SUPPORT OF AMENDED MOTION TO INTERVENE (MTI) OF MAUMEE COALITION II ASSOCIATION

---

In their response, Plaintiffs initially seek to disparage and minimize the relevance of the Maumee Coalition II ("the Coalition") by asserting it was "created for the purpose of litigation,"[1] lacks a website, is not registered with the Ohio Secretary of State, and (at the time of the filing of the MTI) has only four members.[2]  Such so-called "facts" are irrelevant to whether the Coalition and its members have standing and should be granted intervention.  The bulk of the remainder of their memorandum contra is similar: filled with red herrings and mischaracterizations, but devoid of cogent response to most of the Coalition's arguments.

Rule 24 is clear.  Intervention as a matter of right must be granted if the movant has an interest in an issue at the core of the action, the disposition of which would impair its ability to

---

[1] As noted in the Coalition's MTI, most of its members were participants in the first Maumee Coalition that directly participated in every stage of Ohio EPA's development of the Maumee TMDL.

[2] As of the date of this Reply, the Coalition's membership has expanded and now includes the cities of Van Wert, Defiance, Delphos, Findlay, and Lima, Allen County, PCS Nitrogen Ohio, L.P.—all Ohio NPDES permit holders that discharge into the Maumee River watershed—in addition to the city of Dayton.  Thus, if as Plaintiffs suggest, the number of permit holders supporting versus opposing U.S. EPA's approval of the Maumee TMDL is indicative of their relevance in this action, Plaintiffs are significantly outnumbered.

protect such interest, and its interest is not adequately represented by an existing party. Nothing in Plaintiffs' opposition undercuts the evidence that demonstrates that these criteria have been met. However, the Court need not decide whether the Coalition meets the criteria for intervention as a matter of right, because the Court may grant permissive intervention to the Coalition as an additional Defendant, because the Coalition has presented claims or defenses that manifestly share common questions of law or fact with Plaintiffs' Complaint and, perhaps most importantly, the Defendant does not object to permissive intervention.

## I. PLAINTIFFS' OPPOSITION TO INTERVENTION AS A MATTER OF RIGHT LACKS MERIT.

### A. Plaintiffs are not merely asking for U.S. EPA's approval of the Maumee TMDL to be set aside.

Plaintiffs allege that the Coalition's interests are too indirect, remote, and conjectural to support intervention, and thus would not be impaired by a judgment for Plaintiffs. Doc. 44, PAGEID # 1822-1823. Indeed, Plaintiffs claim they are *simply* requesting that the Court declare U.S. EPA's approval of the Maumee TMDL unlawful, and that doing so would not directly lead to more restrictive permit limitations imposed on Coalition members. *Id.* at PAGEID # 1823-1824. The reality is very different.

Plaintiffs' Complaint alleges five specific defects with U.S. EPA's approval of the Maumee TMDL and asks the Court to correct the situation by ordering U.S. EPA to prepare and issue a revised TMDL that contains the terms Plaintiffs want. Doc. 1, PAGEID # 4-5. If the Court were to grant such relief, it would do more than just declare the approval unlawful; it would establish the roadmap for how each of these defects must be fixed in a new Maumee TMDL. The Plaintiffs ask this Court to issue a decision that would order U.S. EPA to issue a TMDL that:

1. Includes binding limits/allocations for dissolved reactive phosphorus (DRP) in addition to the

existing limits/allocations for total phosphorus (TP);

2. Has a Margin of Safety (MOS) more than tenfold higher (3% versus 40%);

3. Assigns binding wasteload allocations to concentrated animal feeding operations (CAFOs);

4. Reapportions load allocations to nonpoint sources; and

5. Contains a more prescriptive implementation plan.

*Compare* Doc. 1, PAGEID # 4-5 *with* PAGEID # 38-39. Although the *degree* of impact of items 3 and 4 on the Coalition's members (and numerous other permit holders that discharge into the Maumee River basin) may be uncertain *at this moment in the case,* items 1, 2, and 5 of Plaintiffs' requests for relief will directly and substantially impact the Coalition members. *See* Doc. 38, PAGEID # 1507-1508 (summary of supporting reasons).

The Endangered Species Act decisions (Doc. 44, PAGEID # 1822-1823) cited by the Plaintiffs for support are inapposite. As pointed out by the Ag Trade Groups in their Reply Memorandum,[3] those decisions involved a denial of intervention because a ruling in plaintiffs' favor would merely require U.S. EPA to revise its listing of endangered species, and the courts did not have authority to compel the Agency to actually list a specific species. Doc. 40, PAGEID # 1581 (Ag Trade Group's Reply). That is not the case here, where Plaintiffs request the Court to direct U.S. EPA to issue a new Maumee TMDL with the specific terms Plaintiffs want.

Furthermore, Plaintiffs failed to even acknowledge, much less distinguish, the TMDL-specific case law cited by the Coalition and the Ag Trade Groups, where the courts <u>granted</u> intervention after finding that intervenors had an interest in the amount of nutrients and sediment they would be permitted to discharge into the watershed. *Id.* at PAGEID # 1582-1584.

The reality is that Plaintiffs are not merely requesting that the Court declare U.S. EPA's

---

[3] Where appropriate, to avoid duplication, the Coalition refers to the Reply filed by the Ag Trade Groups in response to the almost identical opposition filed by Plaintiffs to their MTI.

approval unlawful, but want the Court to issue a judgment that adopts their view of what the contents of a new TMDL should be, while, at the same time, are asking the Court to deny the Coalition, whose members are NPDES permit holders directly and significantly impacted by such judgment, the right to defend its legitimate interests.

**B. Plaintiffs mischaracterize or ignore the Coalition's substantial interests and how they would be impaired if intervention is denied.**

Plaintiffs present a hodgepodge of theories why the Coalition has no substantial legal interest that would be impaired if intervention is denied. All are intellectually bankrupt.

First, Plaintiffs make the rather silly assertion that the Coalition should be denied intervention because its members have "no right to pollute" and, thus, no basis to intervene to protect such "right." Doc. 44, PAGEID # 1822-1823. Under such twisted logic, citizens younger than age 35 would not have a right to challenge a revised driving law that allows only those older than age 35 to drive, since no one has the "right to drive." In fact, however, Coalition members have the right to discharge wastewater containing certain pollutants in specified quantities and/or rates, having been granted such "right" in an NPDES permit issued by Ohio EPA. Plaintiffs may cast these permits as merely a "license" if they like, but once such a "license" is issued, it conveys just as much of a right as a driver's license, a medical license, a law license, *etc*., and the notion that one who possesses a license does not have the right to protect it is inane.

Second, Plaintiffs attempt to discredit the Coalition's "slice of the pie" analogy, but fail to address the very real impacts on the Coalition's members as articulated in their MTI, which effects inevitably follow from granting the relief requested in Plaintiffs' Complaint:

1. Because TMDLs are akin to pollution diets, how the "pieces of the allocation pie" are distributed among the various PSs and NPSs, and the size of the piece apportioned to each source, impact *all* sources. Therefore, whether CAFOs receive specific limits for their

discharge of phosphorus, and whether load allocations for NPSs are specifically apportioned among all NPSs of phosphorus, directly impacts the "slice of the allocation pie" to be allocated to the members of the Coalition.

2. Because the technology used to achieve effluent limits for TP is substantially less expensive than what is needed to achieve effluent limits for DRP, the establishment of permit limits in the TMDL for DRP, as the Complaint demands, would require Coalition members to expend substantial capital as soon as their NPDES permits were updated to incorporate the TMDL-based DRP requirements.

3. Plaintiffs' demand that the MOS be increased (from 3% to 40%) will dramatically increase the pollutant reduction required to be achieved by the members of the Coalition, thereby driving up their costs.

4. Because nutrient enrichment conditions are driven by numerous factors other than PS and NPS contributions, an implementation plan whose "reasonable assurances" are overly strict, particularly in terms of timetables, may well result in a premature and unnecessary reapportionment of the allocation pie, resulting in more stringent allocations and corresponding permit limits for the members of the Coalition.  Doc. 38, PAGEID # 1507-1508.

Plaintiffs' failure to address, much less rebut, these impacts makes clear that the Coalition has demonstrated a substantial legal interest warranting intervention.  If Plaintiffs succeed in this litigation, the Coalition's members would have to invest substantial capital and O&M costs to install and operate additional treatment equipment, paid for by rate increases imposed upon their residents (local governments) or price increases charged to customers (private companies).  *See e.g., Utahns for Better Transportation v. U.S. Dept. of Transportation*, 295 F.3d 1111, 1115 (10th Cir. 2002) (concluding that "[t]he threat of economic injury from the outcome of litigation

undoubtedly gives a petitioner the requisite interest [to intervene]").

Plaintiffs also failed to respond to the Coalition's argument that if Plaintiffs fail to convince the Court that CAFOs and other NPSs cannot be regulated as PSs under the CWA, their focus (to achieve further reductions in phosphorus discharges) will shift to demanding that the Court order U.S. EPA to impose more stringent limits on the remaining phosphorus sources, which include the Coalition members. *Compare Id.* at PAGEID # 1511-1512 (Coalition's MTI) *with* Doc. 44, PAGEID # 1819-1828 (Plaintiffs' opposition). As noted in the Coalition's MTI, there is reason for it to be concerned that Plaintiffs might find a willing partner in U.S. EPA to impose such stricter limits on permit holders. *See* Doc. 38 at PAGEID # 1511-1512 and n. 5 (U.S. EPA's policy requiring, in such circumstances, a reevaluation of the allocations for permit holders, and the Agency's 2021 objection to the draft phosphorus permit limit for the City of Euclid, Ohio).

Plaintiffs have failed to rebut the Coalition's demonstration that it has a substantial legal interest in this proceeding that will be impaired if intervention were denied.

## C. Plaintiffs' *belief* that it is a "remote possibility" that a revised TMDL would harm the Coalition is chimerical and directly impugned by the relief requested in the Complaint.

Perhaps the most quixotic of the Plaintiffs' arguments is their assertion that the Coalition will not be harmed and thus should not be granted intervention because it is a "remote possibility" that the preparation of a revised TMDL would result in Coalition members being subjected to more stringent phosphorus limits, going so far as to state "it would not happen in this case." Doc. 44, PAGEID # 1823-1824. To make such a statement, Plaintiffs must be thinking about an early, much different, draft of the Complaint, or they do not believe in the Complaint they did file, as it explicitly demands exactly that scope of relief. The only support for this argument that Plaintiffs can cobble together is that two of the Plaintiffs are local government permit holders, implying that

they would have to be foolish to ask the Court to issue a decision that could potentially cost them millions upon millions of dollars.  *Id*. at PAGEID # 1823-1824.  It would be unseemly for the Coalition to venture an opinion on the motives of the governmental Plaintiffs, but the Complaint they signed onto has the very real potential to do just that.[4]

**D. Plaintiffs ignore the substantial impairment of the Coalition's interests if it were not allowed to protect them here rather than in an administrative appeal of a revised TMDL, an appeal process Plaintiffs failed to invoke.**

Finally, Plaintiffs assert that, even if the Coalition's interests would be impaired by the issuance of a new TMDL, the Coalition could participate in the subsequent administrative appeal process and challenge it that way. *Id*. at PAGEID # 1824. This is rather disingenuous given that Plaintiffs failed to utilize the very administrative appeal process they now assert the Coalition should use rather than participate in this action.

Although Ohio EPA's issuance of the final Maumee TMDL was not an appealable final action under Ohio Rev. Code § 6111.561(B), Plaintiffs could have challenged the Maumee TMDL *immediately* after the Agency issued the first NPDES permit containing terms and conditions taken from the new TMDL.  *See* Ohio Rev. Code §§ 6111.564 and 3745.04.  The Agency issued the first such permit on October 19, 2023.[5] Thirty-nine entities, including the two political subdivisions that are members of the Plaintiff group, were subject to the new permit (*Id*. n. 5), and it was sent directly to each of them, but Plaintiffs[6] failed to exercise their right to file an administrative appeal challenging the new TMDL.  Now, ironically, despite having ignored their right, indeed obligation,

---

[4] To be clear, without opining on the merits of Plaintiffs' claims relating to the lack of a point source allocation for CAFOs, a judgment that orders the MOS to be increased to 40% and DRP limits to be imposed on permit holders directly impacts all permit holders that discharge into the Maumee River basin, including Plaintiffs' two political subdivision members.

[5] *See* https://dam.assets.ohio.gov/image/upload/epa.ohio.gov/Portals/35/permits/0HP000001/OHP000001.pdf.

[6] Third parties such as ELPC, as well as permit holders, may file administrative appeals challenging actions of Ohio EPA. See, *e.g.*, *FDS Coke Plant, L.L.C. v. Jones,* 166 Ohio App.3d 224 (2006)*; Save the Lake v. Schregardus,* 141 Ohio App.3d 530 (2001)*; Girard Board of Health v. Korleski,* 193 Ohio App.3d 309 (2011).

to use the administrative appeal process available to them, Plaintiffs want to deny invention to the Coalition, because it could putatively vindicate its rights using the same appeal process that Plaintiffs failed to invoke.

In addition, Plaintiffs failed to address (1) the collateral estoppel impacts of a ruling by this Court on challenges to a revised TMDL, (2) the impact of the shift of the burden of proof that would occur in a state appeal filed by the Coalition in response to the issuance of a revised TMDL (*see* Doc. 38, PAGEID # 1513), and (3) the prejudice to the Coalition that would be occasioned by its members having to meet the stringent standard required to obtain a stay of implementation of a revised TMDL while the appeal is pending lest they be subjected to significant economic, technical and legal burdens to comply with more stringent permit limits and deadlines while waiting for the administrative appeal to run its course. *Id*. at PAGEID # 1513-1514.

The Coalition clearly met its minimal burden to show that interests may be impaired or impeded if intervention is denied.

### E. Plaintiffs erroneously assert that U.S. EPA adequately represents the Coalition's interests.

Plaintiffs claim that U.S. EPA can adequately represent the Coalition members' interests in this action, and thus intervention should be denied. Doc. 44, PAGEID # 1824-1827. However, the standard is not whether U.S. EPA *can* adequately represent the Coalition members' interests, but rather whether there is a *chance* that it *may not* do so. The Coalition has clearly demonstrated this possibility exists. As discussed in its MTI, U.S. EPA *may not* adequately represent the Coalition's interests, because there are material differences between their respective interests:

1. U.S. EPA has programmatic, policy, and likely political interests which are much broader than just supporting its approval of the Maumee TMDL (see discussion of the City of Euclid phosphorus limits), which interests may impact its handling of this case.

2. U.S. EPA may, indeed will almost certainly, consider its response to Plaintiffs' challenge in light of the precedential impact of the issues raised by Plaintiffs on future TMDL approvals across the country. The Coalition's interest is limited to whether, *in this TMDL*, U.S. EPA's approval was lawful.

3. Members of the Coalition have economic and civic interests to consider (*i.e.*, those of their citizens, employees, and customers who would pay for potentially more stringent phosphorus limits) that U.S. EPA does not.

4. Only the Coalition, not U.S. EPA, has the requisite motivation and ability to present the factual and legal arguments pertaining to the cost and technical feasibility of having to meet substantially more stringent future TP (and DRP) discharge limits.

5. The Coalition has asserted important issues not raised by U.S. EPA or any other intervenor-movant in this proceeding, most notably the affirmative defenses that the Court lacks subject matter jurisdiction, and that Plaintiffs failed to avail themselves of their state administrative remedy, defenses that are potentially dispositive.

Doc. 38, PAGEID # 1513-1518.

Finally, Plaintiffs assert that the Court must assume that U.S. EPA adequately represents the Coalition because they share the same "ultimate objective," citing irrelevant and dissimilar cases.  Doc. 44, PAGEID # 1824-1826.  However, as effectively demonstrated in the Ag Trade Groups' Reply, this presumption does not apply here, where the Coalition has clearly articulated non-speculative interests that are distinct from those of the broader public. Doc. 40, PAGEID # 1585.  Plaintiffs also ignore additional, more analogous Sixth Circuit and Supreme Court cases in which the courts did not presume adequate representation when there were overlapping interests, but the government's broader interest diverged from the proposed intervenor's narrower interest.

*Id*. at PAGEID # 1584-1586

Based on these differences in interests, the Coalition has clearly demonstrated that U.S. EPA *may* not adequately represent the Coalition's interests.

## II.  THE COALITION SHARES SEVERAL COMMON QUESTIONS OF LAW OR FACT IN THIS ACTION, THUS THE COURT MAY GRANT PERMISSIVE INTERVENTION.

Plaintiffs' regurgitated arguments against permissive intervention are even less persuasive than those advanced in opposition to intervention as of right.  Here, the best they can muster is permissive intervention should not be granted because the Coalition wants to "advocate against Plaintiffs in hopes of avoiding the unlikely possibility that a potential future TMDL might result in more restrictive limits on its members."  Doc. 44, PAGEID # 1825.  The Coalition already rebutted these arguments *supra*.  Contrary to Plaintiffs assertion, the Coalition's interests, and the potential impairment of them, are not indirect or hypothetical.  In other TMDL cases, similarly positioned intervenors have been granted intervention as of right, a much stricter standard than that for permissive intervention. For the reasons discussed in the Coalition's MTI, there can be no question that the Coalition has multiple claims or defenses that share common questions of law or fact with this action.  Therefore, the Coalition requests that the Court exercise its discretion to grant permissive intervention, which the existing Defendants do not oppose.

## III. PLAINTIFFS' OPPOSITION TO INTERVENTION BY THE COALITION CANNOT BE RECONCILED WITH ITS SUPPORT FOR PERMISSIVE INTERVENTION BY OHIO EPA, AND ITS LACK OF OPPOSITION TO INTERVENTION BY OTHER PROPOSED PLAINTIFFS.

The following chart demonstrates the lack of an objectively reasonable basis for Plaintiffs' opposition to the Coalition's MTI:

| Intervening Movant | Plaintiffs' Response to Intervention as of Right | Plaintiffs' Response to Permissive Intervention | Defendants' Response to Intervention as of Right | Defendants' Response to Permissive Intervention |
|---|---|---|---|---|
| Ag Trade Groups as Additional Defendants | Oppose (Doc. 34) | Oppose (Doc. 34) | Oppose (Doc. 32) | No position one way or the other (Doc. 32) |
| Point Source Coalition as Additional Defendants | Oppose (Doc. 44) | Oppose (Doc. 44) | Oppose (Doc. 38) | No position one way or the other (Doc. 38) |
| Ohio EPA as Additional Defendant | Oppose (Doc. 42) | Do not Oppose (Doc. 42) | No position one way or the other (Doc. 33) | No position one way or the other (Doc. 33) |
| Lake Erie Waterkeeper, Food & Water Watch, and Waterkeeper Alliance as Additional Plaintiffs | No position one way or the other (Doc. 46) | No position one way or the other (Doc. 46) | No position one way or the other (Doc. 46) | No position one way or the other (Doc. 46) |

As an initial matter, when an existing party authorizes a moving intervenor to inform the Court that the party "takes no position" as to mandatory or permissive intervention, it is functionally the same thing as saying that the intervention is unopposed.  Thus, the responses to the four MTIs distill to the following:

1.  For the Ag Trade Groups and the Coalition appearing as additional Defendants, Plaintiffs oppose any intervention, while the existing Defendants do not oppose permissive intervention;

2.  For Ohio EPA appearing as an additional Defendant, neither Plaintiffs nor Defendants oppose intervention, but Plaintiffs do not support mandatory intervention; and

3.  For the three environmental organizations appearing as additional Plaintiffs, neither existing

Plaintiffs nor existing Defendants oppose mandatory or permissive intervention, but Defendants reserve the right to say otherwise at a later date.[7]

The conflicts inherent in Plaintiffs' responses to the various intervention motions cast doubt on the credibility of Plaintiffs' objections. On one hand, Plaintiffs seek to (1) diminish the substantial interests of the Coalition as permit holders directly impacted by the outcome of this action, and the issues they share in common with U.S. EPA; (2) downplay the prejudice if they are denied intervention; and (3) demonstrate that U.S. EPA adequately represents their interests. At the same time, Plaintiffs apparently agree that Ohio EPA has substantial interests and common issues sufficient to justify permissive intervention as a Defendant, and that U.S. EPA will not adequately represent those interests. And with respect to the MTI filed by three environmental organizations on December 6 that want to appear as additional Plaintiffs, the existing Plaintiffs implicitly agree that they meet all the criteria to justify *both* forms of intervention, and that existing Plaintiffs cannot adequately represent those organizations' interests.

While it is certainly understandable why existing Plaintiffs welcome the involvement of additional parties who "are on their side" and avoided critically analyzing the legitimacy of their justification to participate in this case, it is intellectually dishonest to challenge the patent legitimacy of the interests of the tens of thousands of people who are "on the other side," and whose ox will be most certainly be gored if the Plaintiffs are successful in this litigation.

The existing Defendants do not oppose permissive intervention by the Coalition as an additional Defendant in this action, and the Coalition's MTI clearly demonstrates the criteria to support such intervention. Plaintiffs' opposition to the Coalition's intervention is without merit.

---

[7] Doc. 46, PAGEID # 1835.

## IV. CONCLUSION.

For the foregoing reasons, Plaintiffs' opposition to the Coalition's MTI is without merit, and their MTI should be granted in the form of mandatory or permissive intervention.

Respectfully submitted,

*/s/ Christina Wieg*
Stephen P. Samuels (007979) (Trial Counsel)
Stephen N. Haughey (0010459)
Christina Wieg (0098693)
**FROST BROWN TODD LLP**
10 West Broad Street
Columbus, OH 43215-3484
(614) 371-8042
ssamuels@fbtlaw.com
shaughey@fbtlaw.com
cwieg@fbtlaw.com
*Counsel for the Maumee Coalition II Association*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed electronically on December 9, 2024, using the Court's CM/ECF system, and parties may access the filing under that system.

*/s/Christina Wieg*
Christina Wieg

*Counsel for the Maumee Coalition II Association*

0128598.0634751  4901-4997-8885v2