# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

|  |  |
|---|---|
| THE BOARD OF LUCAS COUNTY COMMISSIONERS, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 3:24-cv-00779 ) |
| U.S. ENVIRONMENTAL, PROTECTION AGENCY, et al., | ) ) ) |
| Defendants. | ) ) |

## DEFENDANTS' OPPOSITION TO
## MOTION TO INTERVENE AS PLAINTIFFS

### INTRODUCTION

Defendants U.S. Environmental Protection Agency et al. (collectively, "EPA") oppose the motion to intervene as plaintiffs filed by Lake Erie Waterkeeper, Food & Water Watch, and Waterkeeper Alliance ("Movant-Intervenors") because they meet neither the standard for intervention as of right nor the lower bar for permissive intervention. As explained below, Movant-Intervenors' interests are already adequately represented by Plaintiffs in this case. Additionally, Movant-Intervenors fail to meet the Court's requirements for intervention motions like theirs filed after November 19, 2024. Finally, nothing in Movant-Intervenors' supplemental brief, opposing amicus status, demonstrates that Movant-Intervenors are entitled to intervene.

### BACKGROUND

Plaintiffs filed the complaint in this case on May 1, 2024, challenging, pursuant to the Administrative Procedure Act, EPA's September 28, 2023, decision to approve the

State of Ohio's Maumee Watershed Nutrient Total Maximum Daily Load ("Maumee TMDL"). Plaintiffs' nearly 200-paragraph Complaint raises a slew of concerns with EPA's approval, including allegations that the Maumee TMDL "fails to limit [dissolved reactive phosphorus]," "fails to include a margin of safety," "fails to apportion pollution reductions … [to] concentrated animal feeding operations" known as CAFOs, "fails to apportion the load allocation among nonpoint sources of pollution," and "fails to include an implementation plan that provides reasonable assurances that the target pollution loads will be reached[.]" Compl. ¶ 16 (ECF No. 1) (internal quotations omitted).

EPA filed its Answer on July 29, 2024 (ECF No. 16), and the certified index to the administrative record on August 15, 2024 (ECF No. 17) (corrected certified index filed on September 27, 2024 (ECF No. 26)).

A series of preliminary motions followed in September and October 2024. In September, a coalition of agricultural associations ("Agricultural Associations") moved to intervene on behalf of EPA. (ECF No. 19). Plaintiffs then filed two motions on September 23 regarding the administrative record: a motion to supplement the administrative record (ECF Nos. 20, 24), and a motion to compel (ECF Nos. 22, 23). EPA filed a motion for a protective order to govern certain materials in the administrative record on September 27 (ECF No. 25). The Court held a status conference on October 2 to discuss the pending motions. At that conference, the Court placed Plaintiffs' motion to compel in abeyance for EPA to provide Plaintiffs with the subject materials under a temporary seal pending resolution of EPA's motion for a protective order. The Court also set motions briefing schedules that would have briefing on all other pending motions conclude by November 8, 2024. *See* Minute Order (Oct. 2, 2024).

Following that conference, Ohio Environmental Protection Agency ("OEPA") and a group of organizations called the Maumee Coalition II separately moved to intervene as defendants. *See* ECF Nos. 33, 36, 38. On November 1, 2024, the Court entered an order setting response and reply deadlines on those new motions, with the briefing concluding by December 9, 2024. On November 19, 2024, the Court issued another order, observing the pending briefing deadlines and setting additional criteria for any future motions to intervene "[t]o avoid further delay in prompt adjudication of the currently pending motions for leave to intervene[.]" *See* Minute Order (Nov. 19, 2024) ("November Order"). Specifically, the Court ordered the clerk not to accept further motions to intervene unless the movant shows:

> 1. A uniquely substantial and compelling need exists for the movant to be granted leave to file such motion;
>
> 2. How and why allowing the motion will provide an additional perspective and reasons beyond those already to be found in the pending motions will be available to the undersigned; and
>
> 3. Just cause exists for the movant's delay in seeking intervention and with the delay in the determination of the pending motions is justifiable.

*Id.*

Plaintiffs opposed intervention by all three movants (though they did not oppose permissive intervention as to OEPA). *See* ECF Nos. 34, 42, 44. EPA opposed intervention as of right as to the Agricultural Associations and Maumee Coalition II because EPA believes it adequately represents their interests, but it did not oppose permissive intervention. ECF No. 32; *see* ECF No. 36. EPA took no position on OEPA's proposed intervention. *See* ECF No. 33.

3

On December 6, 2024, Movant-Intervenors filed a motion to intervene on behalf of Plaintiffs. Motion to Intervene as Plaintiffs ("Mot. to Intervene") (ECF No. 46). Like Plaintiff Environmental Law and Policy Center ("ELPC"), Movant-Intervenors are environmental nonprofit organizations that seek to protect human health and/or the environment, with members who live, work, and/or recreate in or around Lake Erie. *Compare* Compl. ¶¶ 26 (describing Plaintiff ELPC), *with* Proposed Compl. ¶¶ 32-34 (ECF No. 46-1) (describing Movant-Intervenors).

The Court ordered responses to Movant-Intervenors' motion by January 3, 2025, but at a December 16 status conference vacated that deadline. Instead, the Court allowed Movant-Intervenors, along with the Agricultural Associations and Maumee Coalition II, to file supplemental briefs setting forth "substantial grounds as to why [their] interest would be significantly prejudiced" by participating "as Amicus Curiae instead as an intervening party." *See* Minute Order (Dec. 16, 2024). The Court also granted OEPA's motion to intervene. *Id.* Movant-Intervenors filed their supplemental memorandum in support of their proposed intervention on January 17, 2025 ("Supplemental Brief"). *See* ECF No. 57.

The proposed complaint attached to Movant-Intervenors' Motion to Intervene ("Proposed Complaint") raises concerns with EPA's approval of the Maumee TMDL. Like Plaintiffs, they raise specific concerns with the Maumee TMDL related to dissolved reactive phosphorus, CAFOs, and reasonable assurances. *Compare* Proposed Compl. ¶ 21, *with* Compl. ¶ 16. Indeed, Movant-Intervenors' Proposed Complaint seeks the same relief and raises allegations nearly identical to those in the existing Complaint. *Compare generally* Compl., *with* Proposed Compl. For instance, like Plaintiffs, Movant-

4

Intervenors' Proposed Complaint alleges a single count under 5 U.S.C. § 706. *See* Compl. ¶¶ 193-98 (Count I); Proposed Compl. ¶¶ 187-93 (Count I). And like Plaintiffs, Movant-Intervenors ask the Court to "hold unlawful and set aside U.S. EPA's approval of the Maumee TMDL and require U.S. EPA to prepare a TMDL as required by 33 U.S.C. § 1313(d)(2) and 40 C.F.R. § 130.7(d)(2)." Compl. ¶ 198; Proposed Compl. ¶ 193. In fact, several paragraphs in the Proposed Complaint almost directly mirror language used in Plaintiffs' Complaint. *Compare, e.g.*, Proposed Complaint ¶¶ 70, 84-85, 38-47, 105-08, 129-34, *with* Complaint ¶¶ 82, 97-98, 49-57, 119-22, 141-46.

Movant-Intervenors seek to intervene as of right or, alternatively, by permission of the Court under Federal Rule of Civil Procedure 24(a) and (b). But their motion fails to satisfy Rule 24(a)'s requirements to intervene as of right or the requirements in the Court's November Order. The Court should therefore deny Movant-Intervenors' motion on both as-of-right and permissive grounds.

## STANDARD

Federal Rule of Civil Procedure 24 provides two paths for nonparties to intervene in a case. Rule 24(a) as interpreted by the Sixth Circuit allows movants to intervene as of right if they make four showings: (1) the motion is timely; (2) the movant "has a substantial legal interest in the subject matter of the case;" (3) the movant's "ability to protect that interest may be impaired in the absence of intervention;" and (4) "the parties before the court may not adequately represent" the movant's interest. *United States v. Michigan*, 424 F.3d 438, 443 (6th Cir. 2005). A movant's failure to show even one of these criteria is fatal to as-of-right intervention. *See id.*

Courts in the Sixth Circuit may exercise discretion to grant permissive intervention where a movant demonstrates that "the motion for intervention is timely and alleges at least one common question of law or fact." *Michigan*, 424 F.3d at 445; *see also* Fed. R. Civ. P. 24(b). Upon such a showing, courts balance factors such as undue delay or prejudice to the current parties. *Michigan*, 424 F.3d at 445.

Additionally, the Court provided in its November Order that any motions to intervene filed after November 19, 2024, must meet certain criteria. Specifically, Movant-Intervenors must show "a uniquely substantial and compelling need" to file their motion to intervene, how and why their intervention will "provide an additional perspective and reasons beyond those already to be found in the pending motions" to intervene, and that "just cause exists for [Movant-Intervenors'] delay in seeking intervention," and "the delay in the determination of the pending motions is justifiable."

## ARGUMENT

The Court should deny Movant-Intervenors' motion to intervene because Movant-Intervenors' interests are adequately represented by existing parties. Their motion is also untimely and fails to satisfy the Court's November Order criteria.

### I. Plaintiffs Adequately Represent Movant-Intervenors' Interests.

To start, existing Plaintiffs adequately represent Movant-Intervenors' purported interests in the case. Though inadequate representation is a "minimal" burden, a "presumption of adequate representation … arises when [movants] share the same ultimate objective as a party to the suit." *Michigan*, 424 F.3d at 443-44. Movants fail to overcome the presumption when they do not show (1) collusion between the existing party and an opposing party; (2) "the existing party does not have any interests adverse to" movants; and (3) "the existing party has not failed in the fulfillment of its duty."

6

*Jordan v. Mich. Conf. of Teamsters Welfare Fund*, 207 F.3d 854, 863 (6th Cir. 2000). The Sixth Circuit has further determined that a "mere disagreement over litigation strategy," "a purported lack of vigor in litigation compared to what the movant would have summoned," and "the decision to negotiate with the other side and reach a less-than-ideal compromise" are not sufficient grounds to rebut a presumption of adequate representation. *Albright v. Michigan*, No. 23-1595, 2024 U.S. App. LEXIS 6301, at *14-15 (6th Cir. Mar. 14, 2024) (summarizing cases).

Here, a presumption of adequate representation attaches because Plaintiffs and Movant-Intervenors share the same ultimate objective: "that the Court hold unlawful and set aside U.S. EPA's approval of the Maumee TMDL and require U.S. EPA to prepare a TMDL as required by 33 U.S.C. § 1313(d)(2) and 40 C.F.R. § 130.7(d)(2)." Compl. ¶ 198; Proposed Compl. ¶ 193. Indeed, the seven lettered paragraphs identifying the relief requested in the Complaint and Proposed Complaint are nearly verbatim. *Compare* Compl. ¶¶ A-G, *with* Proposed Compl. ¶¶ A-G. And the three alleged defects Movant-Intervenors identify with EPA's approval of the Maumee TMDL—the Maumee TMDL's lack of limits for dissolved residual phosphorus, its treatment of CAFO discharges, and its supposed lack of a plan providing reasonable assurances—are all raised and addressed in Plaintiffs' Complaint. *Compare* Compl. ¶ 16(a)-(e), *with* Proposed Compl. ¶ 21(a)-(c). Movant-Intervenors thus share an overwhelming overlap in not only their objectives, but also their interests here, and a presumption of adequate representation applies.

Movant-Intervenors fail to acknowledge this presumption and do not provide a basis to rebut it. They do not argue any collusion between Plaintiffs and an adverse party, or that Plaintiffs have failed to fulfill their duty in litigating this case. Movant-

7

Intervenors suggest that they may have diverging interests from Plaintiffs, but their arguments are not supported by the Proposed Complaint.

For instance, Movant-Intervenors argue that their "'underlying incentives for litigating the case' are different and narrower in scope" because they focus specifically on "the Maumee TMDL's improper treatment of CAFO discharges" and the resulting impact on their members. Mot. to Intervene at 11-12. But as explained, Plaintiffs raise the very same concern in the Complaint. *See, e.g.*, Compl. ¶¶ 154-70. Movant-Intervenors stress that they "are uniquely motivated by economic concerns for impacted farmer-members" and that they will likely make arguments informed by "these private economic concerns." Mot. to Intervene at 12-13 (cleaned up). But Movant-Intervenors identify no arguments that they would make that Plaintiff will not, and nowhere in the Proposed Complaint do Movant-Intervenors discuss any economic concerns or unique "farmer member" interests. Instead, as explained, a comparison of the Complaint and Proposed Complaint indicates that Movant-Intervenors would likely raise substantially the same arguments as Plaintiffs. *See Ohio v. EPA*, No. 2:15-cv-2467, 2016 U.S. Dist. LEXIS 15160, at *10-12, 13-15 (S.D. Ohio Feb. 8, 2016) (finding two groups of movant-intervenors were adequately represented by existing parties when, among other things, the movant-intervenors had not identified any unique arguments they would make).

Movant-Intervenors also insist that they would "provide the Court with critical information on how the Maumee TMDL diverges from international consensus recommendations" related to Lake Erie phosphorus reductions and "provide arguments and authorities" regarding EPA's alleged awareness of certain CAFO issues. Mot. to Intervene at 12-13. But this argument ignores the scope of the Court's review under the

8

Administrative Procedure Act. The Court here will consider the material in EPA's administrative record to determine whether EPA's approval of the Maumee TMDL is arbitrary, capricious, or contrary to law. *See* 5 U.S.C. § 706(2)(a). In administrative record review cases, the Court should not upset EPA's technical determination so long as they are reasonable and supported by the administrative record.

Thus, the time for Movant-Intervenors to share any "critical information" regarding phosphorus reductions in Lake Erie was during the agency's decision-making process, not now for the first time on judicial review. To the extent that their arguments would depend on materials outside of the administrative record, such arguments have no place in this case. And to the extent their arguments would be based on material in EPA's administrative record, Movant-Intervenors have not explained how their arguments would constitute more than a "mere disagreement over litigation strategy" or "purported lack of vigor in litigation compared to what the movant would have summoned," both of which are insufficient to demonstrate inadequate representation. *See Albright*, 2024 U.S. App. LEXIS 6301, at *14-15.

It is also unclear how Movant-Intervenors' supposed "national lens and expertise" or prior experience with CAFO and agriculture stormwater issues could rebut the presumption of adequate representation. *See* Mot. to Intervene at 13-14. Again, Movant-Intervenors do not distinguish themselves from Plaintiffs or any arguments that Plaintiffs are likely to raise. As explained, Movant-Intervenors and Plaintiff ELPC are environmental nonprofit organizations that seek to protect human health and/or the environment, with members who live, work, and/or recreate in or around Lake Erie. *Compare* Compl. ¶¶ 26 (describing Plaintiff ELPC), *with* Proposed Compl. ¶¶ 32-34

(describing Movant-Intervenors). While Movant-Intervenors Food and Water Watch and Waterkeeper Alliance may conduct their advocacy work in more states than ELPC, they do not explain why that potential distinction means that their interests are not adequately represented by existing Plaintiffs. Again, Movant-Intervenors do not identify any specific issues that they would raise that are unique or different in any meaningful or significant manner from those identified by Plaintiffs. *See* Mot. to Intervene at 13 (pointing to alleged CAFO issues with the Maumee TMDL); Compl. ¶¶ 154-70 (alleging CAFO issues with the Maumee TMDL).

Movant-Intervenors have therefore failed to demonstrate any interests substantively unique from existing Plaintiffs, much less adverse. Any difference in litigation strategy or litigation vigor compared to Plaintiffs is insufficient, and Movant-Intervenors have therefore failed to rebut the presumption that Plaintiffs adequately represent their interests. Movant-Intervenors thus cannot intervene as of right.

### II. Movant-Intervenors' Motion Is Untimely and Fails to Satisfy the Court's November Order Criteria.

In addition to their failure to demonstrate Plaintiffs' representation is inadequate, Movant-Intervenors also fail to show that their motion is timely and fail to satisfy the criteria in the Court's November Order. Indeed, they treat those criteria as an afterthought, improperly tucking much of the analysis into a declaration attached to their motion. *See* Decl. of Emily Miller ¶¶ 2-6 (ECF No. 46-2) (providing legal argument as to the Court's November Order requirements). Should the Court even consider such arguments, Movant-Intervenors nevertheless fail to justify intervention here because Movant-Intervenors have not satisfied *any* of the Court's November Order criteria.

First, Movant-Intervenors do not show "a uniquely substantial and compelling need exists" for granting their intervention. *See* November Order. Movant-Intervenors point to their interest in protecting their members and furthering their advocacy efforts related to Lake Erie and/or CAFOs generally. Miller Decl. ¶¶ 3-4. But even if these generalized advocacy interests could be sufficient, *see Wineries of Old Mission Peninsula Ass'n v. Twp. of Peninsula*, 41 F.4th 767, 773 (6th Cir. 2022) (observing that the Sixth Circuit has often found advocacy groups with "only a general ideological interest in the lawsuit" not to constitute substantial interests when evaluating as-of-right intervention), the existing Plaintiffs share the very same objective and adequately represent Movant-Intervenors' interests, *see supra* Argument I. Allowing intervention risks substantially duplicative briefing and argument. Movant-Intervenors' "need" to intervene is neither uniquely substantial nor compelling.

Second, Movant-Intervenors have not demonstrated that allowing the motion would provide an additional perspective or reasons beyond those already available to the Court. *See* November Order. Movant-Intervenors stress that they are the only group seeking to intervene on behalf of Plaintiffs. That may be so. But they fail to explain how they provide a perspective different from Plaintiffs, particularly when Plaintiffs already allege the same deficiencies that Movant-Intervenors' Proposed Complaint raises. *See supra* Argument I. While Movant-Intervenors insist that they offer a "unique perspective" because they are "the only entities representing agricultural interests that *oppose* the inadequate regulation of CAFO pollution," *see* Miller Decl. ¶ 5, the Proposed Complaint contains no discussion of any of Movant-Intervenors' members' farming

11

interests, instead focusing broadly on general environmental interests similar to those asserted by ELPC as explained above.

Likewise, Movant-Intervenors' conclusory assertions that Movant-Intervenors "will raise additional arguments to advance Plaintiffs' claims" lack support. *See* Miller Decl. ¶ 5. Movant-Intervenors do not identify what these "additional arguments" would be, or how they would be unique or helpful to the Court here when the Proposed Complaint is substantively identical to the existing Complaint and the interests of Movant-Intervenors are aligned with Plaintiffs. Nor do Movant-Intervenors explain how their purported "history and expertise advocating specifically for Lake Erie" or "national perspectives," *see* Mot. to Intervene at 3, differ from existing Plaintiffs, all of which also have experience with the matters at issue locally, and for ELPC, also in other states, *see* Compl. ¶¶ 26, 123.

Third, Movant-Intervenors fail to show just cause for their delay in seeking intervention. Movant-Intervenors inexplicably waited to file their motion until more than seven months after the case was filed, several weeks after other motions to intervene were filed, and more than two weeks after the Court issued its November Order setting forth additional intervention criteria to avoid further delay. Granting intervention and accepting the nearly 200-paragraph Proposed Complaint would require EPA (and any additional parties granted defendant-intervenor status) to file new answers, which despite the overlap with the existing Complaint, would require additional time before summary judgment briefing could proceed.

Movant-Intervenors' argument that the motion is timely because it was filed in the early stages of this case and quickly after other motions to intervene fails to provide just

12

cause. Motions filed before a merits briefing scheduling order may be timely in some cases. Indeed, EPA does not contest the timeliness of the prior three intervention motions filed in this case. However, the Court entered the November Order before Movant-Intervenors' motion was filed. Movant-Intervenors do not provide any just cause for their delay in seeking intervention sooner. Movant-Intervenors were apparently closely involved in the Maumee TMDL process. *See* Mot. to Intervene at 6. Yet, they do not argue that any particular obstacle caused them to delay seeking intervention, only that the number of other intervention motions "heightened Movant[-Intervenors'] concerns regarding the potential local and national ramifications of this case." Miller Decl. ¶ 6. Their tactical decision to delay seeking intervention until other intervention motions were filed—more than two months after the first motion and more than one month after the most recent one—does not constitute just cause.

Nor have Movant-Intervenors shown good cause based on their suggestion that intervention causes less delay than if they were to file their own lawsuit challenging EPA's approval of the Maumee TMDL. *See* Miller Decl. ¶ 6; *see also* Suppl. Br. at 4-5. In either scenario, EPA and any intervenor-defendants would be faced with a new complaint to answer.

### III. Movant-Intervenors' Supplemental Brief Fails to Justify Intervention.

Movant-Intervenors' Supplemental Brief largely focuses on their asserted entitlement to "full plaintiff status." Suppl. Mem. at 3. Movant-Intervenors stress their ability to file their own lawsuit, which would afford them "the right to fully brief their case, respond to opposing arguments, and appeal an adverse judgment,"—the very rights they claim that amicus status would unfairly deny them. *See id.* at 4-5. But the fact that they may file a separate case does not justify intervention in this case.

13

If Movant-Intervenors were to file their own lawsuit, the Court would presumably consolidate the two cases and order all plaintiffs to join in a single merits brief in support of summary judgment (and any reply), just as the three current Plaintiffs, ELPC, City of Toledo, and Lucas County, will join in a single merits brief. In contrast, allowing Movant-Intervenors to intervene in this case despite overlapping interests as existing Plaintiffs could prejudice EPA because, if allowed to intervene, Movant-Intervenors would request their own merits and reply briefs. Suppl. Mem. at 3-4. As discussed above, these briefs would raise overlapping arguments with existing Plaintiffs' briefing. Allowing Plaintiffs and Movant-Intervenors to file separate briefs would therefore unfairly give aligned plaintiff groups two bites at the apple.

If Movant-Intervenors believe that amicus status is insufficient, then they should file their own lawsuit and join the existing, aligned Plaintiffs in filing consolidated opening and reply briefs on summary judgment. By the same token, if Movant-Intervenors are allowed to intervene as plaintiffs in this case, the Court should require all aligned plaintiff parties to file one consolidated merits brief, given the substantial overlap in interests between Movant-Intervenors and the current Plaintiffs.

In any event, a potential new lawsuit cannot justify Movant-Intervenors' delay in filing their motion to intervene in this case. Movant-Intervenors have failed to satisfy the grounds for intervention in this case, and their participation as amicus curiae will suffice.

## CONCLUSION

For the foregoing reasons, the Court should deny Movant-Intervenors' Motion to Intervene (ECF No. 46), as supplemented by the Supplemental Brief (ECF No. 57).

Date: January 30, 2025                Respectfully submitted,

                                         LISA LYNNE RUSSELL

14

        Deputy Assistant Attorney General

        */s/ Miranda M. Jensen*
        MIRANDA M. JENSEN
        DANIEL R. DERTKE
        United States Department of Justice
        Environment & Natural Resources Division
        Environmental Defense Section
        P.O. Box 7611
        Washington, DC 20044-7611
        Fax: (202) 514-8865
        (202) 598-3071 (Jensen)
        (202) 514-0994 (Dertke)
        miranda.jensen@usdoj.gov
        daniel.dertke@usdoj.gov

        CAROL M. SKUTNIK
        Acting United States Attorney
        GUILLERMO J. ROJAS
        Assistant United States Attorney
        Northern District of Ohio, Toledo Branch
        4 Seagate #308
        Toledo, Ohio 43604

        *Counsel for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that, on January 30, 2025, I caused the foregoing Defendants' Opposition to Motion to Intervene as Plaintiffs to be served by using the Court's CM/ECF system.

        */s/ Miranda M. Jensen*
        MIRANDA M. JENSEN