IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| THE BOARD OF LUCAS COUNTY COMMISSIONERS, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) ) | No.3:24-cv-00779 |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al., | ) ) ) | Judge James G. Carr |
| Defendants, | ) ) | |
| and | ) ) | |
| OHIO ENVIRONMENTAL PROTECTION AGENCY | ) ) ) | |
| Defendant-Intervenor. | ) ) | |

### REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE AS PLAINTIFFS

#### INTRODUCTION

Lake Erie Waterkeeper, Food & Water Watch, and Waterkeeper Alliance, Inc. ("Movants") satisfy the Sixth Circuit's standard for both intervention as of right and permissive intervention, and Defendants' arguments to the contrary are unpersuasive. Not only have Defendants entirely failed to explain their opposition to permissive intervention, *see* EPA Mem. in Opp. to Mot. to Intervene ("EPA Opp."), ECF 60, at 5—which they have opposed for no other intervening party— but their attack on Movants' intervention as of right arguments also fails. As Movants explain in their Motion to Intervene and herein, they more than satisfy the four requirements for intervention

1

as of right, including the inadequate representation and timeliness prongs. *See* Mem. in Supp. of Mot. to Intervene ("Mot. to Intervene"), ECF 46, at 4–5, 11–13.

Movants' interests, objectives, and arguments diverge from that of existing parties, demonstrating the potential for inadequate representation of Movants' unique interests in the lawful regulation of concentrated animal feeding operations ("CAFOs"). Moreover, because Movants sought intervention in the initial stages of this litigation while the Court was deciding preliminary matters and prior to the entry of a merits briefing schedule, their motion is timely. Defendants' reliance on the Court's November 19, 2024, Order to show otherwise is misplaced. As that order related to the Court Clerk accepting new motions to intervene, and the Court has already docketed Movants' motion and permitted further briefing on it, Movants have clearly satisfied the order criteria. The Court should discredit Defendants' effort to supplant the Sixth Circuit's well-established standard for intervention with different (and now moot) criteria, and grant the Motion to Intervene as Plaintiffs.

## ARGUMENT

### I. Movants Have Demonstrated Inadequate Representation Through Their Divergent Interests and Different Arguments

It is well-established in the Sixth Circuit that to satisfy the inadequacy of representation element of the intervention test, proposed intervenors need only show "that there is a *potential* for inadequate representation," and here Movants have met this "minimal" burden. *United States v. Michigan*, 424 F.3d 438, 443–44 (6th Cir. 2005) (internal quotation marks omitted). Though Defendants are correct that a presumption of adequacy arises where Movants share the "same ultimate objective" as parties to the litigation, *id.*, they not only misstate the standard for overcoming this presumption, but also ignore the clear differences in Movants' interests,

objectives, and arguments that more than demonstrate how representation may be inadequate in this case.

Defendants contend that Movants fail to overcome the presumption without a showing of collusion, adverse interests, and failure of duty. EPA Opp. at 6–7. "These three factors, however, cannot be said to be a comprehensive list of the circumstances where intervention of right ought to be granted." *Triax Co. v. TRW, Inc.*, 724 F.2d 1224, 1228 (6th Cir. 1984); *see also Purnell v. City of Akron*, 925 F.2d 941, 949 (6th Cir. 1991) (explaining that "[s]*ome* of the factors to be considered" in the inadequacy analysis include the three listed above) (emphasis added); *Oakland Cnty. v. Fed. Nat'l Mortg. Ass'n*, 276 F.R.D. 491, 499–500 (E.D. Mich. 2011) (discussing in detail how courts that have mistakenly treated these factors as required sub-elements have misstated the rule). Moreover, "interests need not be wholly 'adverse' before there is a basis for concluding that existing representation of a 'different' interest may be inadequate." *Jansen v. City of Cincinnati*, 904 F.2d 336, 343 (6th Cir. 1990) (internal quotation marks omitted). Here, Movants have established their differing interests and sufficiently demonstrated potential inadequacy.

Though Movants do seek the same relief as Plaintiffs, they do not share identical interests or objectives as Defendants wrongly suggest. *See Wineries of the Old Mission Peninsula Ass'n v. Twp. of Peninsula*, 41 F.4th 767, 776 (6th Cir. 2022) (explaining the "real focus" of the inadequacy analysis "is not on *what* the [party] has done, but *why* it is doing it") (emphasis in original). In an effort to paint in broad strokes the "overwhelming overlap" between Plaintiffs and Movants, *see* EPA Opp. at 7, Defendants singularly focus on the fact that Plaintiff ELPC and Movants engage in environmentally protective advocacy work, and have impacted members who use and rely on Lake Erie and the Maumee watershed. *Id.* at 9–10. By that logic, the fact that Defendants' mission is to protect the environment and public health should mean that they will adequately represent

3

any and all environmental and public health interests. That this lawsuit was filed indicates otherwise. This line of attack also entirely ignores the fact that Plaintiff ELPC is litigating *jointly* with city and county governments whose mainly pecuniary interests undoubtedly diverge from Movants. *See* Compl. at ¶¶ 31–45.

Moreover, contrary to Defendants' assertions, Movants have identified several unique objectives not represented by Plaintiff ELPC or any other party. These include interests in (1) ensuring years spent engaging in the Lake Erie remediation process and forming international consensus recommendations to guide the effort do not fall by the wayside, (2) securing fair treatment for non-CAFO farmer members, and (3) preventing an adverse judgment from compounding Defendants' misapplication of the agricultural stormwater exemption through judicial precedent that would damage Movants' nationwide advocacy. *See* Mot. to Intervene at 5–9. Where intervenors' "interest[s] [are] similar to, but not identical with, that of one of the parties, that normally is not enough to trigger a presumption of adequate representation." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 197 (2022) (internal quotation marks omitted); *see also Wineries of the Old Mission Peninsula*, 41 F.4th at 777 ("[O]verlapping interests do not equal convergent ones for the purposes of assessing representation under Rule 24(a).").

Defendants complain that these underlying litigation incentives are not adequately reflected in Movants' Proposed Complaint. However, Movants' proposed pleading *does* discuss their representation of farmer members, deep history advocating for Lake Erie protections from CAFOs, and national level advocacy interests. *See* Proposed Compl. at ¶¶ 32–34. In any event, Movants are not required to expound on their reasons for engaging in a lawsuit in their pleading. *See* F.R.C.P. 8(a)(2) (requiring only "a short and plain statement of the claim showing that the pleader is entitled to relief"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (explaining a

complaint need only contain "enough facts to state a claim to relief that is plausible on its face"). This is particularly the case here, where intervenors "need not have the same standing necessary to initiate a lawsuit in order to intervene in an existing district court suit where the plaintiff has standing." *Associated Builders & Contractors v. Perry*, 16 F.3d 688, 690 (6th Cir. 1994). As such, any extended discussion of Movants' interests or harms in the Proposed Complaint is unnecessary.

Movants' diverging interests and objectives are also reflected in the different arguments they will advance, which the Sixth Circuit has found can be dispositive of inadequacy even where parties share the same ultimate objective. *See Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1247 (6th Cir. 1997) ("[I]t may be enough to show that the existing party who purports to seek the same outcome will not make all of the prospective intervenor's arguments."); *see also ACLU of Mich. v. Trinity Health Corp.*, No. 15-cv-12611, 2016 WL 922950, at *4 (E.D. Mich. Mar. 10, 2016) (describing this standard as a "low bar"). Thus, even if the presumption applies, courts in this circuit have routinely held that intervenors overcome the presumption of adequacy where their arguments differ from that of existing parties. *See, e.g.*, *Yapp USA Auto. Sys., Inc. v. NLRB*, No. 24-1754, 2024 U.S. App. LEXIS 29829, at *3–4 (6th Cir. Nov. 21, 2024) (finding inadequacy where NLRB presented different arguments than union intervenors); *Attitude Wellness LLC v. Village of Pinckney*, No. 21-cv-12021, 2021 WL 5370484, at *4 (E.D. Mich. Nov. 18, 2021) (finding inadequacy where intervenors shared the same objective, but presented different arguments than party); *Wilkins v. Daniels*, No. 12-cv-1010, 2012 WL 6015884, at *4 (S.D. Ohio Dec. 3, 2012) (finding presumption overcome where party and proposed intervenors "each may present its own unique arguments," particularly in light of the "specialized goals" and "unique perspective" intervenors brought to the litigation).

5

Here, contrary to Defendants' claim that the Maumee TMDL defects identified by Movants are "all raised and addressed in Plaintiffs' Complaint," EPA Opp. at 7, Movants raised numerous arguments in their Proposed Complaint, which they will advance in merits briefing, that Plaintiffs do not. For example:

- Movants argue that the TMDL is unlawful and should be set aside because it fails to target CAFOs and AFOs as the largest source of Dissolved Reactive Phosphorus impairing Lake Erie as necessary to attain and maintain water quality standards. Proposed Compl. at ¶¶ 21, 125–26.

- They argue the TMDL is unlawful because it, among other things, "[i]mproperly categorizes all CAFO discharges, including discharges through discernible, confined and discrete conveyances, which are point sources under 33 U.S.C. § 1362(14), as nonpoint sources subject to LAs," and "fails to adopt a load limit adequate to implement, attain, and maintain water quality standards as required by 33 U.S.C. §§ 1313(d)(1)(C) and 1342, 40 C.F.R. § 130.2(g)-(i), and 40 C.F.R. § 130.7(d)(2)," based on numerous unique grounds presented throughout the Proposed Complaint. *See, e.g.*, Proposed Compl. at ¶¶ 21, 137–144, 147–48, and 161–166.

- They emphasize how Ohio EPA's conclusory and circular CAFO findings are not only unsupported, but also directly contradicted by the record, including the agency's assertions that no CAFO in the Maumee watershed discharges point source pollution, and that CAFO discharges are "generally precipitation-induced and inadvertent," "irregular and infrequent," and constitute a "small proportion" of manure pollution in the watershed. *Id.* at ¶¶ 137–40, 143.

6

- They attack EPA's approval of the Maumee TMDL as controverted by the agency's own prior direction to Ohio EPA to assign wasteload allocations to all CAFOs in the watershed regardless of permitting status, and to specifically include discharges via tile drains and groundwater within those allocations. *Id.* at ¶ 161.

- Movants underscore how U.S. EPA's own independent conclusions regarding the widespread problem of unpermitted CAFOs discharging point source pollution and exploiting the agricultural stormwater exemption to evade regulation contradict its approval and acceptance of Ohio's CAFO findings. *Id.* at ¶¶ 162–164.

- They further argue that the approved implementation plan is inconsistent with how U.S. EPA has handled unpermitted CAFOs in other TMDLs, where the agency still found it necessary to assign aggregate CAFO wasteload allocations as a backstop reasonable assurance measure. *Id.* at ¶¶ 181–82.

Though Plaintiffs raise none of these deficiencies, *see* Compl., Defendants attempt to gloss over these marked differences by asserting the "Proposed Complaint is substantively identical to the existing Complaint," EPA Opp. at 12, while at times conceding differences. *See id.* at 4 (characterizing Movants' pleading as "nearly" the same). As the above examples demonstrate, it is not. Nor do these additional arguments represent a "mere disagreement over litigation strategy." *Id.* at 9. Rather, they reflect a deeper and narrower focus on the CAFO issues at play in this case, which uniquely impact Movants' interests. *See Ctr. for Biological Diversity v. U.S. Forest Serv.*, No. 17-cv-372, 2017 WL 4349028, at *1 (S.D. Ohio Sept. 29, 2017) (finding inadequate representation where would-be intervenors had a "more narrow" interest than other parties).

Indeed, Defendants ultimately acknowledge Movants' diverging arguments and interests when they speculate that Movants may have to rely on extra-record evidence to prove their claims,

asserting that Movants should have provided their arguments and supporting information during the decision-making process rather than "for the first time on judicial review." *See* EPA Opp. at 9. Defendants forget that Movants *did* raise these arguments during the TMDL development process. *See, e.g.*, AR_132–38, 4437–46 and 5331–34. In any case, Movants fully intend to rely on the administrative record and other judicially noticeable facts as is proper in Administrative Procedure Act challenges. *See Env't L. & Pol'y Ctr. v. EPA*, No. 17-CV-01514, 2018 WL 1740146, at *12 nn.14–15 (N.D. Ohio Apr. 11, 2018) (judicially noticing relevant information).

## II. Movant's Motion to Intervene is Timely

Movants filed a timely Motion to Intervene as Plaintiffs, during the initial stages of this litigation and prior to the entry of a merits briefing scheduling order, as did the three Movant-Defendant Intervenors. Though Defendants do not oppose any defense-side motions on timeliness grounds, *see* EPA Opp. at 13, they inexplicably challenge the timeliness of Movants' Motion to Intervene. That challenge is wholly without basis in law and fact. Specifically, Defendants fail to identify the correct legal standard for adjudicating timeliness and, as a result, do not present a single legal argument or factual basis to demonstrate how Movants fail to meet that standard.

Instead, Defendants argue that Movants failed to satisfy the criteria of the Court's November 19, 2024 Order ("November Order"), which does not address the legal requirements for adjudicating the timeliness of an intervention motion. To the contrary, the November Order only established three additional criteria to be met before the Court Clerk could "accept . . . further motions for leave to intervene" so as "[t]o avoid further delay in prompt adjudication of the currently pending motions for leave to intervene[.]" *See* Minute Order November 19, 2024.

8

Movants presented a robust analysis addressing the requirements of the November Order in their Motion to Intervene, including through the Declaration of Emily Miller, attached to the motion as Exhibit B. The Court Clerk has already accepted and docketed Movants' motion, with a filing date of December 6, 2024. Moreover, the Court has further allowed the motion to be fully briefed. *See* Minute Order December 16, 2024. ("December Order") (allowing supplemental briefing and responses); Minute Order February 4, 2025 (permitting Movants to file a Reply in support of Motion to Intervene in response to Defendants' opposition). Accordingly, any issues associated with the November Order are now moot.[1]

The correct standard for adjudicating the timeliness of a motion to intervene is a totality of circumstances test that takes into account how far the suit has progressed, the movant's reasons for seeking intervention, the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case, the prejudicial impact on existing parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case, and the existence of unusual circumstances militating against or in favor of intervention. *Jansen*, 904 F.2d at 340. Movants

---

[1] Because the issue now before the Court is whether to grant the Motion to Intervene, the Court should disregard Defendants' arguments related to whether Movants satisfied the November Order criteria. *See* EPA Opp. at 11–13. The November Order criteria do not reflect the Sixth Circuit's standard for evaluating the merits of an intervention motion, and regardless, Defendants' complaints are without merit. Movants have clearly shown more than a "general ideological interest" in the case, *see* Mot. to Intervene at 5–9, that they would bring "additional perspective and reasons beyond those already to be found in the pending [defense-side] motions," and that their motion neither delays the Court's adjudication of defense-side intervention motions nor the case at large, which is all the order required. *See* Mot. to Intervene, Ex. B, Miller Decl., ECF 46-2.

addressed those factors in their Motion to Intervene, *see* Mot. to Intervene at 4–5, and herein. As noted above, Defendants do not.

Applying a wholly different standard derived from the November Order—just cause for delay in seeking intervention—Defendants assert that Movants' Motion is untimely because it was filed months after the case was initiated, "several weeks after other motions to intervene were filed," and "two weeks" after the November Order. EPA Opp. at 12. However, this Court has held "[t]he relevant consideration is the stage of the proceedings, not the amount of time elapsed between plaintiff's filing of the complaint and the motion to intervene"—or, for that matter, between other pending intervention motions. *Zeeb Holdings, LLC v. Johnson*, 338 F.R.D. 373, 377 (N.D. Ohio 2021) (citing *United States v. City of Detroit*, 712 F.3d 925, 931) (6th Cir. 2013)). "And here, the proceedings have not progressed particularly far." *Id.* Defendants fail to articulate why this timeline renders only the Movants' motion untimely, nor do they explain how granting Movants' motion would somehow prejudice the parties when defense-side interventions apparently would not. Given that this case was in its initial stages at the time of filing, and indeed remains in its initial stages as of the date of *this* filing, a difference of "several weeks" between various Motions to Intervene does not support a finding of untimeliness or prejudice. Contrary to Defendant's unfounded assertion, Movants did not make a "tactical decision to delay seeking intervention until other intervention motions were filed," EPA Opp. at 13, as they had no way to know that other intervention motions would be filed.[2]

---

[2]By the same token, Movants had no way of anticipating the November Order either, and Defendants fail to explain the legal significance of filing a mere two weeks after the Court's entry of that order when the stage of proceedings otherwise remained unchanged.

10

Defendants further argue that granting Movants' intervention would necessitate filing a new answer, which would "require additional time before summary judgment briefing could proceed." *Id.* at 12. But Defendants do not articulate how much additional time they believe would be required, how much delay they believe that would cause, or how that would prejudice the existing parties. Any time intervention is granted to a Plaintiff-Intervenor, the Defendant must file an answer; this reality is not a valid basis for denying intervention on timeliness grounds. *See Bd. of Trs. of the Cleveland Asbestos Workers Pension Fund v. Berry Pipe & Equip. Insulation Co.*, No. 08-CV-01082, 2008 WL 4619748, at *3 (N.D. Ohio Oct. 16, 2008) ("While [Defendant] will have to file an answer to the [proposed intervenors'] Complaint, this additional burden on [Defendant] does not make the motion untimely . . . ."). Regardless, filing an answer will not prejudice the existing parties or cause undue delay, especially since Defendants are of the opinion that the Movant-Plaintiff Intervenors' "Complaint is substantively identical to the existing Complaint." EPA Opp. at 12. Defendants cannot have it both ways.

Further, as Defendants noted, if Movants are denied intervention and decide to file their own lawsuit, which is subsequently consolidated with this case, Defendants would also have to file an answer. Accordingly, the need to file an answer does not, in itself, create undue delay or prejudice and is not a sound basis for finding the Motion to Intervene untimely. *See Macomb Interceptor Drainage Dist. v. Kilpatrick*, No. 11–13101, 2012 WL 1598154, at *3 (E.D. Mich. May 7, 2012) (finding against Defendant's timeliness argument where would-be intervenor was "free to initiate an independent lawsuit" which would "subject[] the [] Defendants to exactly the same impact" they attributed to intervention). However, contrary to Defendants' argument, the

filing and consolidation of a new case would, of course, require additional steps, processes, and filings, as well as potentially additional briefing and legal issues, that will take more time and cause greater likelihood of delay than if intervention is granted in this existing case. Additionally, although Defendants seem to prefer proceeding in a consolidated case due to the number of merits briefs they speculate would be filed, EPA Opp. at 14, nothing mandates the filing of a single consolidated brief for all plaintiffs (or plaintiffs and plaintiff-intervenors), whether proceeding in a consolidated case or in intervention. As such, that Defendants will have to respond to Movants' merits brief causes no undue prejudice. *See Macomb*, 2012 WL 1598154, at *3.

## CONCLUSION

For the foregoing reasons, as well as those provided in Movants' Motion to Intervene and supplemental briefing, Movants respectfully request the Court grant them intervention as of right under Rule 24(a), or, in the alternative, permissive intervention under Rule 24(b).

Dated: February 13, 2025

                                                    Respectfully Submitted,

*/s/ Nathan A. Hunter*
Nathan A. Hunter (96389)
Hunter & Hunter LLC
1985 Henderson Rd PMB 63416
Columbus, OH 43220
T: (234) 738-4648
F: (330) 294-1588
nathan@hunterfirm.org
*Counsel for Plaintiff-Intervenors*

| | |
|---|---|
| */s/ Emily Miller* | */s/ Kelly Hunter Foster* |
| Emily Miller (*pro hac vice*) | Kelly Hunter Foster (*pro hac vice*) |
| Food & Water Watch | Waterkeeper Alliance, Inc. |
| 1616 P Street, NW Suite 300 | 180 Maiden Lane, Suite 603 |
| Washington D.C. 20036 | New York, NY 10038 |
| T: (202) 683-2500 | T: (212) 747-0622 |
| eamiller@fwwatch.org | kfoster@waterkeeper.org |
| *Counsel for Food & Water Watch* | *Counsel for Waterkeeper Alliance, Inc. and Lake Erie Waterkeeper* |

**CERTIFICATE OF SERVICE**

    I hereby certify that on February 13, 2025, I electronically filed the foregoing Reply Memorandum in Support of Motion to Intervene as Plaintiffs. Copies will be served upon counsel of record, and may be obtained through, the Court's CM/ECF system.

*/s/ Emily Miller*
Emily Miller
