UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

The Board of Lucas County
Commissioners, *et al.*,

    Plaintiffs,

v.

United States Environmental Protection
Agency, *et al.*,

    Defendants.

Case No. 3:24-cv-779

MEMORANDUM OPINION
AND ORDER

## I. INTRODUCTION

Plaintiffs the Board of Lucas County Commissioners, the City of Toledo, Ohio, and the Environmental Law & Policy Center ("Plaintiffs") filed this lawsuit pursuant to the Administrative Procedures Act, 5 U.S.C. § 701, *et seq.* (the "APA"), against Defendants the United States Environmental Protection Agency (the "U.S. EPA"), Michael Regan, and Debra Shore, (the "Federal Defendants"). (Doc. No. 1). Regan was sued in his official capacity as the Administrator of the U.S. EPA, while Shore was sued in her official capacity as the Region 5 Administrator of the U.S. EPA. (*See id.*). Plaintiffs assert the Federal Defendants violated the Clean Water Act, 33 U.S.C. § 1251, *et seq.* (the "CWA"), by approving a statutorily deficient plan to remediate pollution flowing into Lake Erie. That plan, known as the Maumee Watershed Nutrient Total Maximum Pollutant Load ("the Maumee TMDL"), was prepared by the Ohio Environmental Protection Agency (the "Ohio EPA").[1]

---

[1] My predecessor on this case, United States District Judge James G. Carr, previously granted the Ohio EPA's motion to intervene as a defendant. (*See* non-document order dated Dec. 16, 2024).

Three groups of third parties have filed motions for intervention: (1) Ohio Pork Council, Ohio Dairy Producers Association, Ohio Cattlemen's Association, Ohio Poultry Association, Ohio Farm Bureau Federation, Ohio Soybean Association, Ohio Corn & Wheat Growers Association, American Farm Bureau Federation, National Pork Producers Council, National Corn Growers Association, and United Egg Producers (the "Agricultural Associations"), who move to intervene as Defendants, (Doc. No. 19); (2) the Maumee Coalition II Association (the "Coalition"), who also move to intervene as Defendants, (Doc. No. 38); and (3) Lake Erie Waterkeeper, Food & Water Watch, and Waterkeeper Alliance, Inc., who move to intervene as Plaintiffs (the "Plaintiff Intervenors"), (Doc. No. 46). Those motions now are fully briefed. For the reasons set forth below, I deny the motions of the Agricultural Associations and the Coalition, and grant the motion of Plaintiff-Intervenors.

## II. BACKGROUND

Plaintiffs allege the U.S. EPA has failed to comply with its obligations under the CWA "to prevent harmful algal blooms (HABs) in western Lake Erie." (Doc. No. 1 at 1). "HABs are accumulations of cyanobacteria that can release dangerous neurotoxins and liver toxins." (*Id.* at 2). HABs, among other things, impair both marine animals and vegetation and can pose risks to human health, including by potential transfer through community water systems. (*Id.*). The Lake Erie HAB is caused, at least in part, by the run-off of excess phosphorus from "manure and other livestock waste and synthetic fertilizer from upstream agriculture that either runs off field edges or is discharged through subsurface drainage systems." (*Id.*; Doc. No. 16 at 3). This is the fifth lawsuit collectively filed by Plaintiffs regarding HABs in western Lake Erie. *See ELPC v. U.S. EPA*, Case No. 3:17-cv-01032 (N.D. Ohio) (Carr, J.); *ELPC v. U.S. EPA*, Case No. 3:17-cv-01514 (N.D. Ohio) (Carr, J.); *ELPC v. U.S. EPA*, Case No. 3:19-cv-00295 (N.D. Ohio) (Carr, J.) (consolidated with *Bd. of Lucas County Comm'rs v. U.S. EPA*, Case No. 3:19-cv-00873 (N.D. Ohio)).

2

The CWA tasks the states with preparing a TMDL and submitting it to the U.S. EPA for approval or disapproval. (Doc. No. 1 at 3) (citing 33 U.S.C. § 1313). The Ohio EPA prepared the Maumee TMDL and submitted the final version to the U.S. EPA for review on June 30, 2023. (Doc. No. 1 at 26). The U.S. EPA approved the Maumee TMDL on September 28, 2023. (*Id.* at 37).

Plaintiffs contend the "U.S. EPA's approval of Ohio EPA's TMDL was 'arbitrary, capricious, an abuse of discretion [and] otherwise not in accordance with law' because the TMDL failed to comply with the Clean Water Act and applicable regulations and will not lead to the remediation of Lake Erie's impairment." (*Id.* at 38) (quoting 5 U.S.C. § 706) (alteration in complaint). They seek an order declaring that the U.S. EPA violated the APA in approving the Maumee TMDL and requiring the U.S. EPA to prepare a new TMDL in compliance with the CWA. (Doc. No. 1 at 39). The U.S. EPA contends Plaintiffs are not entitled to the relief they seek. (*See* Doc. No. 16 at 69).

### III. STANDARD

Rule 24 contemplates two paths by which a court may permit a third party to intervene in litigation. The first is intervention of right, which requires a court to permit a third party to intervene where the potential intervenor has made a timely motion and:

> (1) is given an unconditional right to intervene by federal statute[] or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. of Civ. P. 24(a).

The second path – permissive intervention – grants a court discretion to permit a third party to intervene where the potential intervenor has made a timely motion and "is given a conditional

3

right to intervene by a federal statute[] or . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(A)-(B).

## IV. DISCUSSION

The Agricultural Associations, the Coalition, and the Plaintiff-Intervenors all move for intervention as of right or, in the alternative, permissive intervention. (*See* Doc. No. 19-1 at 1; Doc. No. 38 at 1; and Doc. No. 46 at 1). I will consider the motions filed by the Agricultural Associations and the Coalition together.

### A. DEFENDANT-INTERVENORS

#### 1. Intervention as of Right

The Agricultural Associations contend they are permitted to intervene as of right because:

(1) Their motion was timely filed.

(2) They have substantial interests in this case because the Agricultural Association's members "would be directly subject to any new wasteload allocations and load allocations that Plaintiffs argue are required . . . [and] directly impacted by any specific actions, deadlines, or monitoring requirements that Plaintiffs argue are necessary to provide reasonable assurances that the pollutant reductions are achieved." (Doc. No. 19-1 at 9).

(3) Their members' protected interests would be impaired if Plaintiffs obtain the specific relief they seek.

(4) The "U.S. EPA cannot adequately represent its public interest in implementing the CWA while also representing the Agricultural Associations' private interest against unreasonable or unjustified permitting and land management requirements." (Doc. No. 19-1 at 11) (citations omitted).

The Coalition offers similar arguments in support of their contention they are permitted to intervene as of right:

(1) Their motion was timely filed.

(2) They have substantial interests in this case because the Coalition's members hold discharge permits that might be affected if Plaintiffs are successful in this litigation.

(3) Their members' protected interests would be impaired if Plaintiffs obtain the specific relief they seek.

4

> (4) The U.S. EPA may not adequately represent the Coalition members' interest because the U.S. EPA's broader public interests do not necessarily overlap with the Coalition's narrower interest.

(*See* Doc. No. 38).

Parties seeking intervention as of right must prove each of Rule 24(a)(2)'s four factors, as "'failure to meet one of the criteria will require that the motion to intervene be denied.'" *United States v. Michigan*, 424 F.3d 438, 443 (6th Cir. 2005) (quoting *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989)). Neither of the Defendant-Intervenors are entitled to intervene as of right because neither has shown the U.S. EPA does not adequately represent their interests.

Ordinarily, a movant "need show only that there is a *potential* for inadequate representation." *Grutter v. Bollinger*, 188 F.3d 394, 400 (6th Cir. 1999) (emphasis in original) (citing *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n. 10 (1972), and *Linton by Arnold v. Comm'r of Health & Env't, State of Tenn.*, 973 F.2d 1311, 1319 (6th Cir. 1992)). But "applicants for intervention must overcome the presumption of adequate representation that arises when they share the same ultimate objective as a party to the suit." *Michigan*, 424 F.3d at 443-44 (citing *Bradley v. Milliken,* 828 F.2d 1186, 1192 (6th Cir. 1987)). *See also Wineries of the Old Mission Peninsula Ass'n v. Twp. of Peninsula, Mich.*, 41 F.4th 767, 774 (6th Cir. 2022).

The Defendant-Intervenors and the Federal Defendants share the same ultimate objective – to uphold the U.S. EPA's approval of the Maumee TMDL. Therefore, the U.S. EPA is presumed to provide adequate representation for the interests of the Defendant-Intervenors, and those parties bear the burden to overcome that presumption.

The Agricultural Associations contend Plaintiffs "seek to increase the regulatory burdens on [the] Agricultural Associations' members" and that the U.S. EPA cannot adequately represent their members' "private interest against unreasonable or unjustified permitting and land management requirements" while also representing the public interest. (Doc. No. 19-1 at 11). The Coalition

points to its members' "narrower economic and civic interests" which may be impacted if Plaintiffs are successful in this case and argues the U.S. EPA may not adequately represent those interests. (Doc. No. 38 at 13).

But both arguments overlook this Court's limited scope of review in APA litigation. As the Sixth Circuit has stated, "the judicial review provisions of the APA provide a limited cause of action for parties adversely affected by agency action." *Jama v. Dep't of Homeland Sec.*, 760 F.3d 490, 494 (6th Cir. 2014) (citations omitted). In cases like this one, a court "cannot order specific 'mitigation measures' because the only available relief under [§] 706(2) of the APA is to 'hold unlawful and set aside agency action.'" *Concerned Citizens of W. Tenn. v. United States Dep't of Agric.*, No. 1:22-CV-01274, 2024 WL 313647, at *11 (W.D. Tenn. Jan. 26, 2024) (citing 5 U.S.C. § 706(2) and *Palisades Gen. Hosp. Inc. v. Leavitt*, 426 F.3d 400, 403 (D.C. Cir. 2005)). *See also Tenn. Hosp. Ass'n v. Azar*, 908 F.3d 1029, 1047 (6th Cir. 2018) (holding it is the federal agency's duty "to devise a procedurally valid legislative rule that accomplishes [the] statutory goal").

There is no doubt Plaintiffs advocate for the inclusion of specific provisions and pollution limits in a revised Maumee TMDL. (*See, e.g.,* Doc. No. 1 at 28-29). But, because the APA only permits a court reviewing an agency action to vacate the action and remand the matter to the relevant agency, complaints about agency action "cannot be laid before the courts for wholesale correction under the APA." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 893 (1990). Instead, it is the agency's duty to revise the subject agency action "to avoid the unlawful result that the court discerns." *Id.* at 894. Thus, the concerns of the Agricultural Associations and the Coalition that their members' interests might be negatively impacted by potential agency revisions to the Maumee TMDL are not relevant to the question of whether the U.S. EPA complied with the APA in approving the Maumee TMDL. *Cf. Michigan*, 424 F.3d at 444 ("While the proposed intervenors may

6

be legitimately concerned about these future issues, they are not now, and possibly never will be, before the district court.").

The Agricultural Associations contend a presumption of adequate representation "is difficult to square . . . with the Supreme Court's decisions in *Trbovich* and *Berger* [*v. North Carolina State Conference of the NAACP*, 597 U.S. 179 (2022)]." (Doc. No. 40 at 7). But neither of those decisions foreclose the application of a presumption of adequate representation in this case.

Take *Trbovich*. In that case, the petitioner had filed a complaint with the Secretary of the Department of Labor asserting that his union had conducted an election of officers in a manner that violated the Labor-Management Reporting and Disclosure Act. *Trbovich*, 404 U.S. at 529. The Secretary of Labor filed suit against the petitioner's union, seeking to set aside the election results and to hold a new election under the Secretary's supervision. *Id.* Trbovich sought to intervene pursuant to Rule 24(a) in order to pursue additional grounds to set aside the election, to present evidence and argument in support of the Secretary's challenge to the election, and to obtain the imposition of "certain specific safeguards with respect to any new election that may be ordered." *Id.* at 529-30.

The Supreme Court recognized the Secretary of Labor was required "to serve two distinct interests, which are related, but not identical" – enforcing the individual union member's rights and protecting "the vital public interest in assuring free and democratic union elections that transcends the narrower interest of the complaining union member." *Id.* at 538-39 (citations and quotation marks omitted). The Court noted the Secretary, in prosecuting the action, may need to choose a course of action more favorable to one of those interests than the other, and it held Trbovich was entitled to intervene in the litigation. *Id.* at 539. The Court further stated that Rule 24(a)'s "inadequate representation" requirement "is satisfied if the applicant shows that representation of

7

his interest 'may be' inadequate[,] and the burden of making that showing should be treated as minimal." *Id.* at 538 n.10.

The *Berger* Court, considering an appeal from the denial of a motion to intervene filed by the leaders of the two houses of North Carolina's General Assembly, reiterated that an intervenor's burden to show existing parties did not adequately represent the intervenor's interest "'should be treated as minimal.'" *Berger*, 597 U.S. at 196 (quoting *Trbovich*, 404 U.S. at 538 n.10). The Court then rejected the Fourth Circuit's application of "a heightened presumption of adequacy" based upon the proposed intervenors' "governmental status" because North Carolina had structured its government in such a way that more than one state actor could "defend its laws and protect its interest" in court. *Berger*, 597 U.S. at 197.

Importantly, though the question was not explicitly before it, the Court declined to consider "whether a presumption of adequate representation might sometimes be appropriate when a private litigant seeks to defend a law alongside the government or in any other circumstance." *Id.* Stated otherwise, the application of a presumption in those circumstances was not directly foreclosed by the Court's rulings in either *Trbovich* or *Berger*. Therefore, the Sixth Circuit's holding in *Michigan* that "applicants for intervention must overcome the presumption of adequate representation that arises when they share the same ultimate objective as a party to the suit" remains good law in this Circuit. *Michigan*, 424 F.3d at 443-44 (6th Cir. 2005) (citing *Bradley,* 828 F.2d at 1192).

The Agricultural Associations contend that, even if there is a presumption of adequate representation, because their members have private interests which diverge from the public interest pursued by the U.S. EPA. (Doc. No. 40 at 7-8) (citing *Wineries of the Old Mission*, 41 F.4th at 774-75). In that case, both Peninsula Township, Michigan and the proposed intervenor (an organization made up of various property owners in the Township) both sought the same ultimate objective – upholding Township zoning ordinances applicable to the plaintiff wineries. *Id.* at 770, 774.

8

The Sixth Circuit concluded the proposed intervenor had rebutted the presumption of adequate representation by showing its members were "primarily concerned with safeguarding their land values, ensuring the quiet enjoyment of their homes, and preserving the viability of their farms," while the Township had a potentially conflicting interest in protecting Township finances in the face of potential damages in the hundreds of millions of dollars. *Id.* at 775; *see also id.* at 774-77.

In reaching this conclusion, the *Wineries of the Old Mission* court distinguished its prior decision in *Michigan*. *See id.* at 776. The court noted that, in *Michigan*, "the proposed intervenors had failed to demonstrate that Michigan's incentive to litigate the case would flag over time." *Id.* (citing *Michigan*, 424 F.3d at 444.) The court then pointed out that "[p]resent here is what was absent in *Michigan* – the stick of damages and the carrot of settlement." *Wineries of the Old Mission*, 41 F.4th at 776. Thus, this case, in which there is no specter of damages, is much more analogous to *Michigan* than to *Wineries of the Old Mission*. I conclude the Agricultural Associations fail to rebut the presumption of adequate representation where they seek the same ultimate objective as the U.S. EPA – upholding the Maumee TMDL.[2]

For its part, the Coalition attempts to rebut the presumption of adequate representation by pointing to six proposed affirmative defenses not raised by either the U.S. EPA or the Ohio EPA. The first is that Plaintiffs are estopped from raising any issues they did not raise during the administrative process. (Doc. No. 38 at 14). But the Coalition fails to show how presenting this defense would assist in resolving Plaintiffs' claim, as it is well established as a matter of law that a plaintiff may not raise any arguments for overturning an agency action during litigation that were not

---

[2] The Agricultural Associations also argue they can show the U.S. EPA's representation may be inadequate by showing the U.S. EPA will not make all of the Agricultural Associations' arguments. (Doc. No. 40 at 8) (citing *Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1008 (6th Cir. 2006)). But that case does not help the Agricultural Associations, because the Sixth Circuit declined to apply a presumption of adequate representation after concluding the proposed intervenor and the defendant did not share the same ultimate objective. *Ne. Ohio Coal.*, 467 F.3d at 1008.

9

raised during the administrative proceedings. *See, e.g., Mich. Dep't of Env't Quality v. Browner*, 230 F.3d 181, 183 n.1 (6th Cir. 2000). *See also United States v. L. A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952) ("Simple fairness . . . requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice.").

The remaining five defenses in essence contend that review is foreclosed because the Ohio EPA drafted the Maumee TMDL and the U.S. EPA engaged in "a purely ministerial approval process." (Doc. No. 38 at 15). In the Coalition's view, the federal administrative process involved only "procedural, not substantive, review limited to a determination whether the Agency's checklist of items is contained in the state-issued TMDL." (*Id.* at 14).

It is true, as the Coalition notes, that the CWA requires the U.S. EPA to approve or disapprove a state's proposed plan within 30 days of submission and does not contain any review criteria. (*Id.*) (citing 33 U.S.C. § 1313(d)(2)). But "[c]ontrary to [the Coalition's] assertion, neither the CWA nor the regulations give exclusive authority or discretion to the state to determine whether any aspect of the CWA or its guidelines have been satisfied." *Marquette Cnty. Rd. Comm'n v. United States Env't Prot. Agency*, 188 F. Supp. 3d 641, 655 (W.D. Mich. 2016), *aff'd,* 726 F. App'x 461 (6th Cir. 2018). Instead, § 1313(d)(2) requires the U.S. EPA to compose its own TMDL if it disapproves the state's submission. 33 U.S.C. § 1313(d)(2).

The Coalition's last five proposed affirmative defenses lack merit and therefore do not demonstrate the U.S. EPA does not adequately represent its interests in this APA litigation.

I conclude the Agricultural Associations and the Coalition fail to show the U.S. EPA might not adequately represent their interests in seeking to uphold the validity of the Maumee TMDL and deny their motions to intervene as of right.

**2.     Permissive Intervention**

The Agricultural Associations and the Coalition alternatively argue that they should be permitted to intervene pursuant to Rule 24(b). (Doc. No. 19-1 at 12-13; Doc. No. 38 at 16-17).

I conclude permissive intervention is not appropriate in this case.  As I concluded above, the Defendant-Intervenors are adequately represented by the U.S. EPA.  While I do not doubt that these groups have substantial expertise relevant to the underlying subject matter addressed by the Maumee TMDL, arguments about the potential impact of the changes Plaintiffs favor are "outside the scope of permissible arguments." *Barton v. United States Dep't of Lab.*, No. 5:24-00249-DCR, 2024 WL 5440831, at *1 (E.D. Ky. Nov. 26, 2024) (citation omitted).  Including those arguments in the litigation now would be premature and "unnecessarily complicate this case and delay the proceedings." *Ohio v. United States Env't Prot. Agency*, 313 F.R.D. 65, 71-72 (S.D. Ohio 2016). Therefore, I deny the motions of the Agricultural Associations and the Coalition to intervene under Rule 24(b).

**B.     PLAINTIFF-INTERVENORS**

The Plaintiff-Intervenors also seek intervention as of right and, in the alternative, permissive intervention.  (Doc. No. 46).  The U.S. EPA does not challenge the motion to intervene as to the first three Rule 24(a) factors, and I conclude Plaintiff-Intervenors have established those factors. (*See id.* at 7-14).  As the U.S. EPA argues, the Plaintiff-Intervenors share the same ultimate objective as Plaintiffs – vacatur of the Maumee TMDL and remand for further agency action – so they must overcome the presumption of adequate representation in order to establish they are entitled to intervene.  (*See* Doc. No. 60 at 7).

I conclude the Plaintiff-Intervenors jointly have sufficiently rebutted the presumption that Plaintiffs adequately represent their respective interests.  The Plaintiff-Intervenors point to several alleged bases for vacating the Maumee TMDL based upon the administrative record that are not

11

raised by Plaintiffs, including that "Ohio EPA's conclusory and circular [concentrated animal feeding operations ("CAFOs")] findings are not only unsupported, but also directly contradicted by the record," that the U.S EPA's "approval of the Maumee TMDL [is] controverted by the agency's own prior direction to Ohio EPA to assign wasteload allocations to all CAFOs in the watershed regardless of permitting status, and to specifically include discharges via tile drains and groundwater within those allocations," and that the approved plan is inconsistent with the U.S. EPA's approach to "unpermitted CAFOs in other TMDLs." (Doc. No. 65 at 6-7). These arguments bear directly on the dispositive question of whether the U.S. EPA's approval of the Maumee TMDL was arbitrary, capricious, or contrary to law, and they are not adequately encompassed by Plaintiffs' allegations and arguments in support of their APA claim.

The U.S. EPA also argues I should deny Plaintiff-Intervenors' motion because it fails to comply with additional criteria set forth in Judge Carr's November 19, 2024 Order. On that date, Judge Carr ordered that the Clerk of Court

> shall accept no further motions for leave to intervene, absent the movant's showing that: 1. A uniquely substantial and compelling need exists for the movant to be granted leave to file such motion; 2. How and why allowing the motion will provide an additional perspective and reasons beyond those already to be found in the pending motions will be available to the undersigned; and 3. Just cause exists for the movant's delay in seeking intervention and with the delay in the determination of the pending motions is justifiable.

(Non-document Order dated Nov. 19, 2024).

My conclusion that Plaintiff-Intervenors' interests are not adequately represented by the current Plaintiffs resolves the first two criteria.

The U.S. EPA argues Plaintiff-Intervenors have not established just cause for a delay in seeking intervention because they did not adequately explain why they filed their motion more than a month after the Coalition filed its motion to intervene and more than two weeks after Judge Carr's November 19, 2024 Order. (Doc. No. 60 at 12). But there is no real dispute that this case was still

12

in the early stages of litigation when Plaintiff-Intervenors filed their motion. At that time, there were three pending motions to intervene, one of which was not yet fully briefed. And Judge Carr had held only one status conference with counsel.

The relevant time period thus is not relative to the filing of the complaint or the other motions to intervene; it is relative to Judge Carr's November 19, 2024 Order imposing additional restrictions on motions to intervene beyond the Federal and Local Civil Rules. Plaintiff-Intervenors filed their motion just over two weeks later – a period interrupted by the Thanksgiving holiday – and the U.S. EPA fails to show the slight passage of time between Judge Carr's Order and the motion filing date has caused more than a de minimis delay in these proceedings.

I conclude Plaintiff-Intervenors are entitled to intervene in this case pursuant to Rule 24(a).

## V. CONCLUSION

For the reasons stated above, I grant the motion of Lake Erie Waterkeeper, Food & Water Watch, and Waterkeeper Alliance, Inc. to intervene as Plaintiffs in this case. (Doc. No. 46). I deny the motions to intervene filed by the Agricultural Associations and Maumee Coalition II Association. (Doc. Nos. 19 and 38). Plaintiff-Intervenors shall file their complaint within seven days of this Memorandum Opinion and Order.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge